# EXHIBIT E
# PART 2

A Arrests, yes.

Q Any arrests for criminal possession of a controlled substance?

A Yes.

Q How many arrests did you make for criminal possession of a controlled substance, approximately?

A I can't recall off the top of my head. A few.

Q A few, okay.

Less than five?

A You could say less than five.

Q Were any of those arrests for -- was the controlled substance a prescription drug item?

A I believe one was.

Q Are you certain or you're just not sure?

A I'm sure one was.

Q You recall what the prescription drug item was?

A Not off the top of my head.

Q Did the arrest that you made during the time that you were New York State Park

Police, did that result from a traffic stop?
A Which one?
Q The one that you made for the criminal possession of a controlled substance, the controlled substance being a prescription drug.
A No.
Q Prior to 2008 when you became a member of the Westchester County Department of Public Safety, sir, did you have to go through any specific training?
A Yes.
Q How long was the course of study?
A That was a 26-week academy, so it was the second academy I went through. It was in Utica, it was the Eighth Session.
Q That was given by the New York State Police or by the Westchester County Department of Public Safety?
A By the New York State Park Police.
Q So that was the entity that was used for training for Westchester County Department of Public Safety?
A Correct.
Q You say that was 26 weeks?

A Correct.

Q Was any of the instruction given by members of the Westchester County Department of Public Safety?

A No.

Q Did any part of that study relate to the issue of probable cause?

A Just say that one more time, I'm sorry.

Q The 26-week academy, did any of the training that you received during that 26-week period relate to the issue of probable cause to make an arrest?

A Yes.

Q Do you recall what that study consisted of or what that training consisted of?

A What it consisted of?

Q Well, of the 26 weeks how much time was spent on the issue of probable cause for an arrest?

A I can't recall how much time was spent on it.

Q Was it just hours or was it weeks?

A I would say weeks.

- Timothy Hicks -

Q So there was a period of weeks where the focus was on probable cause?

MS. CHAPMAN-LANGRIN: Don't guess.

A I can't say for sure.

MS. CHAPMAN-LANGRIN: If you don't know, say you don't know.

A I can't say for sure.

MS. CHAPMAN-LANGRIN: Don't guess.

Q During the period of time that you were at the academy there was training and instruction concerning the New York State Penal Law?

A Yes.

Q The New York State Criminal Procedure Law?

A Yes.

Q And with respect to the New York Penal Law, was there also training and instruction on the Penal Law provisions relating to the criminal possession of a controlled substance?

A Yes.

Q And did that training and instruction include criminal possession of prescription drugs for which the person did not have a prescription,

if you know?

A I received a drug recognition course from Dutchess County Sheriff's Department, is when I received prescription drug -- a course on prescription drugs. I don't recall what happened in the New York State Park Police Academy.

Q The drug recognition training that you received, that -- there is within police terminology and parlance the term criminal drug recognition experts, correct, DREs?

A Correct.

Q You were not training to be a drug recognition expert, correct?

A No.

Q You're not certified as a drug recognition expert by the Westchester County Department of Public Safety or any other police agency, correct?

A No.

Q The study that you received, the instruction or study that you had with respect to drug recognition, that was training concerning the various procedures that are used and designed to test someone to determine whether they are

then under the influence of drugs, correct?

MS. CHAPMAN-LANGRIN: Just note my objection to form.

A No.

Q That's not correct?

A That's not correct.

Q The training that you received in drug recognition, what did that training consist of?

MS. CHAPMAN-LANGRIN: I think that's a better question.

MR. ARONWALD: Thank you, I appreciate that.

MS. CHAPMAN-LANGRIN: That's why I objected to form. I'm allowed to object to form, Counsel.

MR. ARONWALD: I know, but I appreciate the opinion that that was a better question.

Q You can answer the question. What did that training consist of?

A That training consisted of being able to identify certain drugs, narcotics, prescriptions, so on.

Q Prescription drugs you mean?

A Everything, a whole wide range.
Q But you said prescriptions. Prescription drug items, correct?
A Correct.
Q Not a prescription but the prescription drug item?
A Prescription drugs, controlled substances.
Q In terms of how they look, what they look like, what color they are, what size they are, correct?
A Correct.
Q And that would have included Oxycodone?
A Correct.
Q That's not the same as training in terms of the various tests that a police officer can perform to determine whether someone is at that time under the influence of any drug, correct?
A It's a different course.
Q You didn't take that course?
A No.
Q In the course of study that you had at

the 26-week academy, was any of that training devoted to Article 33 of the Public Health Law?

A Yes.

Q Did any of that training relate to Section 3305 of the New York State Public Health Law?

A Yes.

Q As of May 28th, 2012 were you familiar with Section 3305 of the New York State Public Health Law?

A Yes.

Q And were you familiar with that provision of 3305 of the Public Health Law which says that -- well, let's go back.

As of May 28th, 2012 were you aware of the provisions of Section 220 of the New York State Penal Law?

A Yes.

Q Did you know as of May 28th, 2012 that the New York State Penal Law, which are definitions relating to controlled substances, provides that the term unlawfully means in violation of Article 33 of the Public Health Law, were you aware of that on May 28th, 2012?

A Yes.

Q Were you aware on May 28th, 2012 that Section 3305 of the Public Health Law provides that the provisions restricting the possession and control of controlled substances shall not apply to temporary incidental possession by employees or agents of persons lawfully entitled to possession of the substance, are you aware of that?

MS. CHAPMAN-LANGRIN: Do you want to show him something?

MR. ARONWALD: No, I'm asking now was he aware. He's already testified he was aware on May 28th of the provisions of Article 33 and Section 3305.

MS. CHAPMAN-LANGRIN: It's just that I see you are reading something, so I --

MR. ARONWALD: Well, I just wanted to make sure that I --

MS. CHAPMAN-LANGRIN: Counsel, could you please let me finish?

MR. ARONWALD: Sure, go ahead. Just let me know when you are finished.

MS. CHAPMAN-LANGRIN: You'll know when

I'm finished when I stop talking. I see you are reading from something, so I didn't know if you wanted to show him that. That was it.

Q The question is: Were you aware on May 28th, 2012 at the time that you stopped Sherrie Deanda that Section 3305 of the New York State Public Health Law provides that the provisions of Article 33 restricting the possession and control of controlled substances shall not apply to the temporary incidental possession by employees or agents of persons lawfully entitled to possession of that substance, were you aware of that at the time that you stopped Sherrie Deanda?

A Yes, it doesn't apply.

Q I didn't ask you whether it -- by the way --

A I just said that it doesn't apply.

Q You don't have a law degree, correct?

MS. CHAPMAN-LANGRIN: Just note my objection.

Q You don't have a law degree, right?

MS. CHAPMAN-LANGRIN: Objection, it's

argumentative. You can make that argument --

MR. ARONWALD: I'm asking him a question.

Q Do you have a law degree?

MS. CHAPMAN-LANGRIN: Objection.

Q Do you have a law degree?

MS. CHAPMAN-LANGRIN: Objection. No. Does he have a law degree, what does that have to do with anything?

MR. ARONWALD: Under the Federal rules he has to answer every question except a question as to form unless there's a legal privilege claimed. There's no legal privilege claimed. I'm asking him whether or not he has a law degree.

MS. CHAPMAN-LANGRIN: If you are not requesting evidence that is going to lead to admissible evidence, then I can object.

MR. ARONWALD: I'm trying to determine the basis for his gratuitous response that 3305 does not apply.

MS. CHAPMAN-LANGRIN: Why don't you ask him that question, what is the basis why

you feel it doesn't apply, as opposed to does he have a law degree? He has already told you what education he has. So I just think you are being a little bit argumentative.

MR. ARONWALD: I'm not being argumentative, I'm asking a question. And under the rules he's required to answer it yes or no.

MS. CHAPMAN-LANGRIN: Go ahead, answer it. Do you have a law degree?

A No.

MR. ARONWALD: And I move to strike the portion of his answer that it does not apply as being nonresponsive to the question.

Q The question was simply whether or not you were aware on May 28th, 2012 that Section 3305 --

A I'll correct that. I said yes, it doesn't apply if we want to review it. And I responded to him, so.

MR. ARONWALD: And I'm moving to strike everything after the word yes as not

- Timothy Hicks -

responsive to the question which called only for a yes or no response.

MS. CHAPMAN-LANGRIN: Objection.

MR. ARONWALD: Well, the Judge will rule on the objection.

MS. CHAPMAN-LANGRIN: Rule on what? Objection. Go ahead.

Q By the way, prior to May 28th, 2012 had you received any training concerning the New York State Penal Law definition of the word unlawfully as set forth in Section 220.002 of the Penal Law?

A Yes.

Q By the way, are you also familiar with General Law 48.02 of the Department of Public Safety?

A I don't know it offhand.

MS. CHAPMAN-LANGRIN: Which one, 48.02?

MR. ARONWALD: 48.02, yes. I believe it's in one of the exhibits which I'm happy to show him. But if you want to get it, you can.

Q I'm simply asking now whether you are

familiar with that General Order?

A Yes.

Q On May 28th, 2012 you were aware that there is a relationship between Penal Law Section 220.09 and Section 3305 of the Public Health Law?

MS. CHAPMAN-LANGRIN: Objection. I think it calls for him to make some legal conclusions. He's not --

MR. ARONWALD: I'm asking --

MS. CHAPMAN-LANGRIN: Can I finish, Counsel?

MR. ARONWALD: Sure, go ahead. I'm sorry.

MS. CHAPMAN-LANGRIN: He's not a lawyer, which you've described. I think that calls for information outside of his knowledge. But he can answer.

Q Do you understand my question or do you want me to restate it?

A Restate it.

Q On May 28th, 2012 at the time that you stopped Sherrie Deanda did you understand that Section 220.09 of the New York State Penal Law related to Section 3305 of the New York State

Public Health Law?

A There is a relation if the exemptions apply.

Q Prior to May 28th, 2012 how many arrests had you made for criminal possession of a controlled substance in the 4th Degree involving Oxycodone?

MS. CHAPMAN-LANGRIN: While he was a member of the Department of Public Safety with the county?

Q At any time.

A At any time you're saying?

Q I think with respect to his work as a deputy sheriff he answered no. With respect to his term with the New York State Park Police he said there was one arrest involving a controlled substance but it was not Oxycodone.

So I'm asking now, I'm assuming and correct me if I am wrong, but any other arrests -- you've made no other arrests during your work as a peace officer other than --

A I'm not a peace officer.

Q As a police officer.

A I'm a police officer, there you go.

Q Other than as a part-time deputy sheriff, a member of the New York State Park Police or as a member of the Westchester County Department of Public Safety, correct?

A Well --

Q Other than those three positions, have you ever made any arrests?

MS. CHAPMAN-LANGRIN: Objection to form.

A I made a whole bunch of arrests. What are you trying to say?

MS. CHAPMAN-LANGRIN: Yes, please.

Q Would it be fair to say that you have made no arrests other than in your capacity as either a part-time deputy sheriff, a New York State Park police officer, or a police officer for the Westchester County Department of Public Safety?

MS. CHAPMAN-LANGRIN: Do you understand it?

A You're saying other than being a police officer have I made an arrest?

Q Yes. Yes, that's my question.

A I've made hundreds of arrests. What

are you trying to get at?

Q If you don't understand my question, let me break it down for you.

A Other than acting in my official capacity?

MS. CHAPMAN-LANGRIN: Let him rephrase it.

Q You testified that you worked as a police officer as a part-time deputy sheriff, a member of the New York State Park Police and a member of the Westchester County Department of Public Safety, correct?

A Correct.

Q Other than your services or duties in connection with those three positions, have you ever made an arrest?

A Not unless it was related to my duties.

Q That's my question. Okay, fine.

MS. CHAPMAN-LANGRIN: It was a little convoluted, but okay.

MR. ARONWALD: Thank you again for the gratuitous response.

MS. CHAPMAN-LANGRIN: You're welcome,

Bill.

Q Prior to May 28th, 2012 how many arrests had you made for criminal possession of a controlled substance in the 4th Degree involving Oxycodone?

A I can't recall.

Q Do you have any independent recollection that prior to your arrest of Sherrie Deanda on May 28th, 2012 you had ever arrested anyone for criminal possession of a controlled substance involving Oxycodone?

A I can't recall.

Q Prior to May 28th, 2012 how many arrests had you made for criminal possession of a controlled substance where the controlled substance was a prescription drug? If you don't recall, you don't recall.

A I can't recall.

Q As you sit here now do you know whether prior to May 28th you had ever before made an arrest charging someone with criminal possession of a controlled substance involving a prescription drug?

A Yeah.

Q How many arrests did you make prior to May 28th for criminal possession of a controlled substance involving a prescription drug item?

A Say it one more time. I'm sorry.

Q You testified that there were arrests that you made prior to May 28th, 2012 for criminal possession of a controlled substance involving a prescription drug item. I'm asking how many prior to May 28th, 2012, if you remember?

A I would say I handled a handful of arrests dealing with it and I've been on multiple where I have assisted.

Q Were any of those cases cases in which you were in fact the arresting officer?

A I don't know how many off the top of my head.

Q Were any of them cases in which you were in fact the arresting officer?

A Yeah.

Q But you don't recall how many?

A No.

Q How many of those were cases resulting from a traffic stop that you made?

A My personal arrests?

Q Yes.

A I can't recall.

Q In any of those cases did the person that you arrested tell you that the items belonged to someone else and he was delivering it to that person who had left the item with them by mistake?

A I can't recall.

Q When you're saying you can't recall, do you have any independent recollection that on at least one other occasion the person you were arresting told you that the prescription belonged to someone else and he was returning the item to them because they had left it by mistake in his possession or her possession; are you saying that that did happen on at least one occasion prior to May 28th, 2012?

A I'm not saying that.

Q Was your decision to arrest Sherrie Deanda informed in any way by the fact that she was in possession of $1200 in cash?

A No.

Q Did you ask her where she got the cash

from?

A No.

Q Are you sure about that?

A Yes.

Q In how many of the cases prior to May 28th, 2012 where you arrested someone for the criminal possession of a controlled substance involving a prescription drug was the defendant either black or Hispanic?

MS. CHAPMAN-LANGRIN: Just note my objection. There is nothing in the Complaint at all about any type of racial proclivity. You prevented me from asking that question in the 50-h. I'm going to ask him not to answer that.

MR. ARONWALD: Okay, and I'm telling you he's required to answer unless there's a claim of privilege.

MS. CHAPMAN-LANGRIN: You prevented me from asking the question in the 50-h. You would not let your client answer the question.

MR. ARONWALD: But you could have asked it today, ma'am, and you chose not to.

MS. CHAPMAN-LANGRIN: Would you stop calling me ma'am? My name is Taryn Langrin.

MR. ARONWALD: Miss Langrin, ma'am is a term of politeness to me.

MS. CHAPMAN-LANGRIN: I'm asking you not to do that.

MR. ARONWALD: Okay, that's fine. You asked and I'll now comply with that.

MS. CHAPMAN-LANGRIN: Thank you.

MR. ARONWALD: Miss Langrin, you could have asked that question today and you chose not to.

MS. CHAPMAN-LANGRIN: What was the question, read it back?

MR. ARONWALD: I'm asking in how many of those cases where he made an arrest prior to May 28th, 2012 where the charge was criminal possession of a controlled substance involving a prescription drug was the defendant, whether it be male or female, black or Hispanic.

MS. CHAPMAN-LANGRIN: I'm just going to note my objection. He can answer. There's nothing in the Third Amended

Complaint, I'm reserving my objection to trial, as to nationalities or racial about people who he's arrested prior to May 28th.

Q Okay. You can answer the question.

A I don't recall.

Q Do you have any independent recollection that in any of those arrests the person that you were arresting was not black or Hispanic?

MS. CHAPMAN-LANGRIN: Note my objection.

Q You can answer the question.

A Say it one more time. Sorry.

Q Do you have any independent recollection that in any of those instances where you arrested somebody for the criminal possession of a controlled substance involving a prescription drug prior to May 28th, 2012 that the defendant was not black or Hispanic?

A Yes.

Q On May 28th, 2012 would you please describe what occurred with respect to your stoppage, questioning and arrest of Sherrie Deanda?

A You just want me to say what happened on the day?

Q Absolutely. Explain everything from the time that you began pursuit of her until the time that you arrived back at the police headquarters in Hawthorne in your own words.

A Okay. I observed a vehicle travelling southbound on the Bronx River Parkway in the City of Yonkers, southbound just north of Leeward Drive.

Q What town would that be in or city, what part of Westchester?

A City of Yonkers. I observed the vehicle travelling 70 miles an hour in a 40 mile per hour zone. I activated my emergency lights, pulled the vehicle over. I approached the operator of the vehicle.

Q Do you recognize the operator of the vehicle in the room?

A Yes, as Sherrie Deanda. Upon contact with her I asked for her driver's license and registration. She then fumbled around through her items, found her purse. She then pulled her driver's license from the purse.

Q Let me just interrupt you for one second, because I'll forget otherwise.

Going back to the video camera, when the video camera is activated does it record the speed of the car that is being pursued?

A I can't be sure.

Q Does the camera record the speed at which you were driving?

A Honestly, I think it records like the forces in the car, like the G forces moving like. I don't know if it actually has -- records the actual speed of the -- I don't know.

Q I don't know what G force is.

A That's what it has on there. I don't know.

Q Just to educate me, what does G force mean as far as you understand it?

A The amount of force when you are driving the vehicle. So maybe it calculates that into miles per hour. That's what I'm assuming, I don't know.

Q But when you were persuing her she was going 70 miles an hour, correct?

A Correct.

- Timothy Hicks -

Q How fast were you going to catch up to her?

A I was pacing her vehicle.

Q So you were at 70 miles an hour also?

A Right.

Q Without the lights on?

A Right.

Q So you were saying you pulled her over, you asked her for her license and registration. She was fumbling around and then?

A I observed a pill bottle in her purse in plain view. The pill bottle was unlabeled, it had blue pills in it.

Q What color was the bottle?

A Like a yellow orange color.

Q Amber?

A Correct.

Q You were able to see that the pills were blue even though it was an amber bottle?

A Correct.

Q You were able to see from looking at it when it was in plain view, whatever the position of the bottle was, you could see that it had no label on it?

A Correct.
Q Okay. So was the entire bottle, all 360 degrees of the bottle was in plain view of you as it was in her purse?
A Three hundred -- is that possible?
Q A bottle is around, correct? The bottle is round, the prescription bottle?
A I can't see the back of you right now. Is that what you are saying? I can't see the back of you. That's 360 degrees, right?
Q That's right. So you're saying that the bottle did not have a label on it. From what you saw in plain view you could tell that the bottle did not have a label on it. That's what you said?
A Correct. You could see through it.
Q You could see through the bottle. So you could see through the bottle to the other side and you could see that there was no label anywhere on the bottle?
A Correct.
Q Okay, all right. Go ahead.
A Through my training and experience as a police officer, I observed those pills and

immediately identified them as Oxycodone hydrochloride. I stated to Miss Deanda that may I see the pills. She in turn just handed them over.

Q You asked her may I see the pills or did you tell her to give you the bottle?

A No, I said may I see them. And then she turned the pills over to me. At this point I asked her, do you have a prescription for this medication? This is a controlled substance. She said, no, I do not have a prescription. I then went back to my police car, ran her driver's license, called for a female officer to assist with a search. I checked the registration, the driver's license. Returned to her vehicle, had her exit her vehicle for my safety because I knew she was going to be arrested. Took her back to my police vehicle. She voluntarily sat in the rear of the police car, no handcuffs. I was awaiting for a female officer to arrive on the scene.

Q Did you ask her to get into the back of the police car?

A Yes, and she complied.

Q So it's not that she volunteered to go in the back seat. You asked her if she could go in the back seat and she got in the back seat, correct?

A Correct.

Q Are you sure you didn't say, "Get in the back seat"?

A I don't know exactly how I said it.

Q Okay, no problem. But in any event whether you asked her or you told her, she did it?

A Correct.

Q Okay.

A After this Police Officer Corporale arrived on scene. I told her we have this female, I need her to be searched, make sure she doesn't have any weapons. We then had Miss Deanda exit the vehicle, go to the passenger side of my patrol vehicle where she was patted down by Officer Corporale and then handcuffed.

Q By Officer Corporale?

A Corporale.

Q Not by you?

A No. We then put her back in the

patrol vehicle rear seat. Got the children out of the vehicle. Put them in the back of Corporale's vehicle. Called for a tow truck. And we did an inventory search of the vehicle. Upon an inventory search of the vehicle there was nine pills located in the driver's side door. Let me correct that. There was Oxycodone, nine Oxycodone pills, same that were in the pill bottle. The pill bottle contained 40 Oxycodone pills. And then there was one Oxycodone pill that was right on the floor in the same vicinity as the doorjamb. Along with that there was also 13½ Tramadols in plain view in the cup holder.

Q And she was not charged with illegal possession of the Tramadol?

A No, it's not a controlled substance. It's also known as Ultram, it's the same pill.

An inventory search was done of the vehicle. The vehicle was towed and impounded.

Q What about the cash?

A When we inventoried the vehicle we discovered that there was a bunch of singles. I don't know how many there was -- there were. If I can refer to my report.

MS. CHAPMAN-LANGRIN: Do you want him to refer to his report?

MR. ARONWALD: Sure.

Q Are you talking about the incident report?

A Yeah. (Perusing document.) I can't be certain how much money was located in the center console.

Q The incident report doesn't make any reference to any money, right?

A No.

Q Go ahead. But there was a quantity of one --

A There were singles.

Q There was a quantity of $100 bills -- no, there was a quantity of one dollar bills?

A There was a quantity of one dollar bills, correct.

Q Okay.

A That was secured for her prisoner property and then --

MS. CHAPMAN-LANGRIN: Well, this is a long answer. Do you have any questions for him?

MR. ARONWALD: He's doing just fine, Miss Langrin.

MS. CHAPMAN-LANGRIN: All right.

MR. ARONWALD: I asked what about the cash. I think he's still answering that question if it's okay.

Q There was a quantity of one dollar bills. Okay. Was there any other cash that was --

A Her property was -- her purse and whatever else she had on her, earrings and all that stuff was secured. She was transported back to headquarters, so on. And then Angela Corporale transported the two children in her patrol vehicle.

Q I'm still focusing on the inventory search. So my question was: Other than the quantity of one dollar bills that was seized and impounded, was there any other cash that was seized from the person of Miss Deanda or from the car as a result of the arrest?

A There was a total of $1266 in U.S. currency that was seized. About --

MR. ARONWALD: Let the record reflect

that counsel is showing the witness some documents and pointing to some areas in the document.

THE WITNESS: Correct.

MR. ARONWALD: Which I object to, by the way.

MS. CHAPMAN-LANGRIN: Okay, noted.

A Which was seized as prisoner property. I also want to add that during the traffic stop when the defendant retrieved her license she retrieved it from her pocketbook where the pills were located with no label on the pill bottle. Okay. And she did make claim that the purse was not hers. She said the purse was her sister's.

Let me think. After that an inventory search was done of the vehicle. And the defendant was transported back to headquarters for processing.

Q The $1266 that was seized, where was the $1266 located within the vehicle?

A There was the singles that were in the center console.

Q Okay.

A The single dollar bills were located

in the console.

Q So the $1266 included the quantity of one dollar bills?

A Correct. And the money that was in her purse, which I counted in front of her at the station.

Q How much money was in her purse?

A It was $1266.

Q But the quantity of one dollar bills was not in her purse, correct?

A Correct.

Q So the $1266, if that came from her purse, that was in addition to the quantity of one dollar bills that was found elsewhere in the car, correct?

A It was in addition to the money, correct.

Q So the amount of money that was seized was in excess of $1266?

A No, no.

Q How much money --

A $1266 was her prisoner property. That's how much money she had on her at the time of the arrest.

Q But you had testified that you counted out in front of her the money that was in her purse. And I believe that in answer to my question you testified that that was $1266.

A That's the total, that's everything.

Q So how much money was in her purse that you counted out? That's what I'm trying to understand. You testified you don't know how many one dollar bills there were. You said that you counted out money from her purse. I'm trying to get you to explain how much money did you count out from her purse. So that if the total amount of money is twelve sixty-six, then we'll be able to figure out how many one dollar bills were in the car separate from her purse. And if you don't know, you don't know.

A At the scene when I inventoried the vehicle I removed the money from the center console. I went back and I told Miss Deanda, "This is the money that was found in the center console. I put it with your purse." All right. So when we got back to the station we counted all the money.

Q And the total was twelve sixty-six?

- Timothy Hicks -

A Correct.

Q Was there any other questioning conducted by you of Miss Deanda after she told you that she did not have a prescription for the Oxycodone?

A Other than trying to find out who could take care of the children. Because that was my concern, who could take care of the children.

Q Getting back to the Complaint and your Answer, I would like you to take a look at the Complaint which has been marked as Plaintiff's --

MS. CHAPMAN-LANGRIN: The Complaint?

MR. ARONWALD: Yes, the Complaint.

MS. CHAPMAN-LANGRIN: Okay.

Q Which is marked as Plaintiff's Exhibit 1. And I would like you to please look at paragraph fifteen of the Complaint, which is on Page 4. You see that paragraph fifteen on Page 4 of the Complaint?

MS. CHAPMAN-LANGRIN: Yes. First read this.

Q Now in fact, contrary to what you just testified about, isn't it true that in response

- Timothy Hicks -

to the questions that you asked Miss Deanda at the time that you approached the vehicle, she told you that the pills were Oxycodone, that they belonged to her sister Paula Fontanette and that Paula Fontanette had a valid prescription for the pills, didn't she tell you that?

A I informed her that the pills were Oxycodone.

Q Did she tell you that the pills did not belong -- So you are saying she's not the one who told you they were Oxycodone, you told her they were Oxycodone?

A Yes.

Q Did she tell you that the pills did not belong to her?

A She said that her sister had a valid prescription for the drug.

Q But you didn't say that before in response to the questions I asked you as to what happened at the scene of the arrest.

A Because it's irrelevant.

Q Contrary to what you deem relevant, I asked you to relate what happened.

MS. CHAPMAN-LANGRIN: And he told you.

Q I didn't ask you to relate only what you think is relevant.

MS. CHAPMAN-LANGRIN: Objection. He told you. If you have follow-up questions, you can ask him directly what did the plaintiff speak to you about, what did the sister speak to you about.

MR. ARONWALD: He's already answered the question.

Q I now want to ask you to take a look at your Answer, the Answer that was filed on your behalf which is Plaintiff's Exhibit 2. I want you to please take a look at paragraph twelve of your Answer.

MS. CHAPMAN-LANGRIN: Paragraph twelve?

Q Paragraph twelve of your Answer.

MS. CHAPMAN-LANGRIN: Okay, uh-huh.

Q Paragraph fifteen of the Third Amended Complaint alleges that in response to Hicks' questions plaintiff explained that the pills were Oxycodone which belonged to her sister Paula Fontanette, that Fontanette had a valid prescription for the pills, had inadvertently

left them at plaintiff's home the day before and that she was on her way to Manhattan to return them. That's what is alleged in the Complaint. Correct, did I read it correctly?

MS. CHAPMAN-LANGRIN: Paragraph fifteen?

MR. ARONWALD: Yes.

A Uh-huh.

MS. CHAPMAN-LANGRIN: And he answered.

Q Would you look at paragraph twelve in your Answer? In your Answer you state, "As to the allegations contained in paragraph fifteen of the Third Amended Complaint, Defendant Hicks admits that plaintiff told him that the pills belonged to her sister Paula Fontanette and that her sister had a valid prescription for the pills and denies the remaining allegations in paragraph fifteen."

You see that, correct?

A Correct.

Q Getting back to the incident report that was provided by your attorney pursuant to Rule 26(a), you see that in the incident report -- by the way, the incident report is

prepared by you?

A Correct.

Q And it is signed by you, correct?

A Correct.

Q On May 28th, 2012 what was your understanding as to what the purpose and function is of an incident report?

A Purpose and function. I mean that's a broad question. The purpose and function of an incident report is to tell you the events of what happened. In this case, an arrest, you would have to show probable cause, the reason for the arrest.

Q Is that your answer? I don't want to cut you off.

A Yeah.

Q Now, the incident report becomes an official record of the Department of Public Safety?

A Correct.

Q Is the incident report reviewed by any superior officer?

A Yes.

Q By the way, in connection with your

arrest of Sherrie Deanda, did you have to get authorization or approval from a commanding or superior officer before the arrest was executed or processed?

A No.

Q Did you discuss the facts and circumstances leading up to the arrest with any commanding or superior officer before she was processed?

A Yes.

Q Who was that?

A I can't recall who I spoke to on the phone. But I called the desk, I advised them of the situation that I had. I advised them that I was making an arrest for criminal possession of a controlled substance. I advised them it was a female, because it would require them to have obviously either another person, two people in the booking room or a female present. And I advised them there was two children in the vehicle with them, that we would have to bring them back to headquarters, and that somebody would have to be watching them until somebody, a parent or guardian arrived.

Q So did you explain to the officer, the desk officer that you spoke to -- was it a male or female?

A I believe there was only males working that day.

Q Do you remember whether it was Police Officer Thomas?

A I told you I don't remember.

Q But in any event, were you just informing him of the fact that you had made an arrest or were you providing him with information to get approval to make the arrest?

A No, I was making the arrest.

Q Was it your understanding as of May 28th, 2012 that your incident report becomes a document that is forwarded to the District Attorney who draws up the formal accusatory instrument?

A We draw up the accusatory instrument. As the actual detective when it comes to this case would draw up the accusatory instrument.

Q The initial --

A Correct. And then it's forwarded to the District Attorney. So we draw the accusatory

instrument.

Q Does the District Attorney then prepare what is a formal complaint or information that gets filed as a court document?

MS. CHAPMAN-LANGRIN: Note my objection as to the job and what the duties of a District Attorney are. I'm not sure he knows what those are.

MR. ARONWALD: Okay, your objection is noted.

A Sometimes the District Attorney will change the complaint or adjust it. In this case it's a Felony Complaint, so sometimes they adjust the complaint and have the officer, any officer come down and sign it.

Q So in this case included within the documents that you provided as the case file is a document which is labelled a Felony Complaint and it purports to be signed by you. Do you recognize that as your signature?

A Yes.

Q Do you recall when it was that that Felony Complaint was prepared?

A On the 28th.

Q Was it signed by you on the same date?
A Yes.
Q Were you the one that typed it?
A No.
Q Who prepared it?
A Detective Pavone.
Q Did Detective Pavone prepare it based on the information you gave him?
A Correct.
Q Did Detective Pavone prepare the Felony Complaint based upon the incident report that you prepared?
MS. CHAPMAN-LANGRIN: I would think that's a question for Detective Pavone, what he utilized to prepare the Felony Complaint, so I object.
MR. ARONWALD: I understand.
Q But you can answer anyway, if you know.
A I can't say exactly what he used.
Q Who prepared the incident report?
A I prepared the incident report.
Q You typed the incident report?
A Correct.

- Timothy Hicks -

Q The incident report that you prepared, it has a section which is called narrative?

A Yes.

Q In the narrative you did not include the fact that Miss Deanda told you that the pills belonged to her sister Paula Fontanette and that Paula Fontanette had a valid prescription for the pills, you did not include that in your narrative, correct?

A Yes.

Q And did you relate that information to Detective Pavone before Detective Pavone prepared the Felony Complaint which you signed?

A I can't recall.

Q By the way, going back to the scene of the arrest. Did there come a time before you transported her to the Department of Public Safety headquarters that you had a telephone conversation with anyone?

A Yes.

Q I'm sorry. You already testified you had a telephone conversation with the desk officer. Other than that, did you have a telephone conversation with someone who

identified themselves as Paula Fontanette?

A I believe that's who I spoke to. I can't say for sure, because I can't identify the person over the phone.

Q Were you told at the time that the person you were speaking to was Sherrie Deanda's sister Paula Fontanette?

A Yes.

Q And did you place the call to Paula Fontanette?

A No.

Q How was it that you had the telephone conversation with Paula Fontanette or with someone who you were told was Paula Fontanette?

A Miss Deanda offered the phone to me and my concern was to find somebody who could take care of the children.

Q Yup.

MS. CHAPMAN-LANGRIN: Is there a question? Please answer.

Q And so --

MS. CHAPMAN-LANGRIN: Is there a question?

MR. ARONWALD: Yes, the question was,

how did it come about that you had a telephone conversation with Paula Fontanette?

MS. CHAPMAN-LANGRIN: And he answered it, so is there another question? He answered that question. You can read it back.

MR. ARONWALD: I didn't ask her to read it back.

MS. CHAPMAN-LANGRIN: Okay, but I'm asking her. If he answered it, is there another question?

MR. ARONWALD: If Miss Langrin would like the question read back, would you read it back?

MS. CHAPMAN-LANGRIN: No, I don't. I said if you would like. He's answered your question. So is there another question?

MR. ARONWALD: Yes, I'm getting to it. Are you in a rush to go anywhere?

MS. CHAPMAN-LANGRIN: No, I'm not. Because you paused and I wasn't going to let him answer until you framed another question. I'm not in a rush at all.

MR. ARONWALD: I was just trying to make sure that the witness had completed his answer. Okay?

MS. CHAPMAN-LANGRIN: That's okay.

Q So what occurred during the telephone conversation that you had with the person that you were told was Paula Fontanette; what did you say to her, what did she say to you?

A I advised her that her sister was under arrest for possession of a controlled substance. And that my only concern was what could we do with the children. She became noncompliant with my request for assistance with the children and I ended the conversation.

Q When you say she was noncompliant with your request about the children, did she say anything that was not related to the children?

A I can't recall the entire conversation.

Q How long did the entire conversation last?

A Maybe three minutes.

Q During the entire conversation did Paula Fontanette say anything at all about the

Oxycodone pills?

A I can't recall what she said about them. She may have. But regardless of the totality of the circumstances, it was irrelevant because the defendant didn't have a prescription. So she was under arrest no matter what.

Q Did Paula Fontanette tell you during that conversation that the Oxycodone pills belonged to her?

A I can't recall.

Q So you're not denying that she told you that, you're saying you don't recall that she told you?

A I don't recall.

Q Did she tell you during that conversation that she had a valid prescription for the Oxycodone pills?

A I can't recall.

Q Did she tell you that she was prepared to come to the scene or to headquarters with proof that the pills belonged to her and that she had a prescription for them?

A I can't recall.

Q So you're not denying that she said

any of that --

MS. CHAPMAN-LANGRIN: Just note my objection. He's given his testimony. You're recharacterizing it.

MR. ARONWALD: Miss Langrin, please allow me to ask a question. If you have an objection, then you know that he's required to answer it and your objection is preserved.

MS. CHAPMAN-LANGRIN: He is answering it.

Q My question is: When you say you don't recall, you're not denying that she said any of those things, you are simply saying you don't recall whether she said them or not, correct?

MS. CHAPMAN-LANGRIN: Note my objection to form.

Q Correct, isn't that correct?

A That I'm not denying that?

Q You're not denying that she told you that she had a prescription for the pills, correct? You're saying that you don't recall that she said that.

A The conversation was two years ago. I can't recall.

MS. CHAPMAN-LANGRIN: Note my objection to form.

Q I understand. You are telling us a whole a lot of other things that happened two years ago. You remembered that she was noncompliant with what you wanted to talk to her about. You've said that you don't recall her saying to you that the pills belonged to her, that she had a valid prescription for them and that she was willing to come to headquarters or to the scene with the prescription. You've said you don't recall her saying any of those things.

A I don't recall.

Q And I'm saying to you with respect to any of those things you're not denying that she said it, you're simply saying you don't recall it, correct?

A I don't recall.

MS. CHAPMAN-LANGRIN: Objection as to form.

Q By the way, the incident report that you prepared on May 28th, 2012 also makes no

reference whatsoever to any conversation with Paula Fontanette, correct?

A No.

Q Did you ever advise Sherrie Deanda of her Miranda rights?

A No. She was never being questioned when she was in custody. That's the only time Miranda rights are required. She refused to answer any questions when asked if she wanted to make a statement to Detective Pavone.

Q And that was --

A And if she had said she wanted to be interviewed and wanted to say something, that would have been her opportunity to say so. And then she would have been read her Miranda rights.

Q But based upon your Answer, the Answer that your attorney filed on your behalf in this action, which you testified you spoke to her about in connection with the preparation of it, you admit in your Answer that on May 28th at the time that you stopped her and questioned her Miss Deanda told you that the pills belonged to her sister and that her sister had a valid prescription for them. So she did make that

statement to you at the scene of the arrest, correct?

A Yes. She also said that she did not have a prescription for the medication that was in her possession.

Q I understand that.

So was Miss Deanda ever advised of her Miranda rights in your presence?

A No.

Q After May 28th, 2012 did you ever have occasion to discuss the facts of the case with anyone from the Westchester County District Attorney's Office?

A Never.

Q Did you in connection with May 28th, 2012 voucher the evidence that was seized at the time of the arrest?

A Yes, I vouchered the evidence that was seized.

Q So that included the cash and the pills?

A It was the pills. I don't know if the cash was seized as evidence. That would be a question for Detective Pavone.

Q Of the arrest on May 28th, 2012 did you have any -- did you have any connection whatsoever with the prosecution of Sherrie Deanda by the Westchester County D.A.'s Office?

A No.

Q So the last contact you had with the case was on May 28th, 2012?

A Correct.

Q Did you at any time tell Officer Corporale that Sherrie Deanda had told you that the Oxycodone pills belonged to Paula Fontanette and that Fontanette had a valid prescription for them, did you ever tell that to Officer Corporale?

A I can't recall.

Q Going back to May 28th, 2012. There came a time when Sherrie Deanda was transported by Officer Corporale to the White Plains City Court, correct?

A I don't know that.

Q You didn't transport her to the White Plains City Court, correct?

A No.

Q You're saying you don't know who did.

So with respect to -- you may have already answered this. If you did, I apologize. But I just want to make sure that we are focusing on the exhibits. I'm showing you what's marked as Plaintiff's Exhibit 3. Did you testify you've never seen that document before?

MS. CHAPMAN-LANGRIN: He did.

MR. ARONWALD: I'm asking him.

MS. CHAPMAN-LANGRIN: I'm saying it was asked and answered, that's all. You already asked that.

Q Are you aware of the fact that your attorney on your behalf served a document labelled, Defendant Hicks' Discovery Responses to Document Request and Responses to Interrogatories, which identifies Police Officer Angela Corporale as the female officer who transported Sherrie Deanda from the Westchester County police headquarters to the White Plains City Court for arraignment and from the White Plains City Court to the Westchester County Jail in Valhalla, New York; are you aware of that?

A Yes.

Q Well, are you the one that provided

that information to Miss Langrin?

A I don't know who did.

Q But are you saying -- I believe you just testified that you don't know who it was that transported Sherrie Deanda to the White Plains City Court on May 28th?

A Well, it says it on there, right?

Q No, I'm asking what you --

A I didn't transport her, so I don't --

MR. ARONWALD: Can we go back to the question a few minutes ago where I think I asked him who transported her to --

MS. CHAPMAN-LANGRIN: And I think he answered.

MR. ARONWALD: Can I just finish?

MS. CHAPMAN-LANGRIN: I'm just interjecting that I think he answered it.

MR. ARONWALD: I know, but I would like to please be permitted to tell the reporter what I want read back.

MS. CHAPMAN-LANGRIN: And I'm not telling you not to.

MR. ARONWALD: You interrupted me as I was trying to tell her what I wanted. She

can't do two things at once.

MS. CHAPMAN-LANGRIN: Go ahead.

MR. ARONWALD: Would you please find the question where I believe I asked him who transported Sherrie Deanda to the White Plains City Court?

MS. CHAPMAN-LANGRIN: All I commented was I believe he answered the question. That was it.

(The requested testimony was repeated.)

Q So does this document, Plaintiff's Exhibit 3, refresh your recollection that the person who transported her was Officer Corporale?

MS. CHAPMAN-LANGRIN: He's said he's never seen it.

Q So basically your attorney filed this as your response to our document requests and you're not sure whether or not Officer Corporale is actually the person who transported Sherrie Deanda to the White Plains City Court even though this Answer filed in your behalf says it was?

MS. CHAPMAN-LANGRIN: Do you know for a fact that she transported her?

A No, I don't know that.

(Recess held.)

MR. ARONWALD: Just a couple of follow-up questions.

I would like to leave a space in the transcript so that to the extent that Officer Hicks can recall who the desk officer was that he spoke to he can put that in there.

DATA REQUESTED:________________________________

MS. CHAPMAN-LANGRIN: Could you also back up all your requests in writing?

MR. ARONWALD: As soon as I get the transcript back I will do that.

MS. CHAPMAN-LANGRIN: Okay, that's fine.

MR. ARONWALD: But you are going to have the transcript also.

And would you in kind follow up the request you made of Sherrie Deanda this morning. You left a blank space in the transcript. Would you follow that up in writing as well?

MS. CHAPMAN-LANGRIN: Absolutely.

Q After you arrived at headquarters with Miss Deanda in custody, do you know whether the desk officer who was on duty then was the same desk officer you spoke to by telephone?

A No.

Q If this occurred at approximately eight o'clock in the morning, so what was your tour that day? Were you working like --

A 7 to 3, 7 a.m. to 3 p.m.

Q So it was 7 to 3. Were the desk officers working the same 7 to 3 tour?

A They start a little earlier than I do.

Q What time do they start? If you start at 7 to 3 --

A 6:30.

Q So it can be 6:30 to 2:30, is that about it?

A Right.

Q Under ordinary circumstance, whoever the desk officer was that you spoke to at the scene would have been the same desk officer that was on duty when you got back to headquarters?

A Not necessarily. There's a few bosses that are on.

Q Do you know whether Paula Fontanette at some point on May 28th came to the headquarters in Valhalla?

A I was advised by counsel that she was.

MS. CHAPMAN-LANGRIN: I do not -- listen to the question. Read the question back.

Q I'll repeat.

Other than what your lawyer may have told you, do you know whether or not on May 28th, 2012 Paula Fontanette came to the headquarters in Valhalla, New York?

A No, I wasn't advised.

Q Other than what your lawyer may have told you, do you know to whom the two children were released on May 28th, 2012?

A Yes, they were released to Paula Fontanette and Monique Sutton.

Q And the children was released to Miss Sutton and Paula Fontanette on May 28th, 2012 at the police headquarters in Valhalla, New York?

A Correct.

Q So Paula Fontanette did come to headquarters on May 28th, 2012?

- Timothy Hicks -

MS. CHAPMAN-LANGRIN: For the purpose of picking up the children.

MR. ARONWALD: Excuse me, Miss Langrin.

Q Paula Fontanette came to the police headquarters in Valhalla, New York on May 28th, 2012, correct?

A I never dealt with her. I was handed a copy of her ID saying that this is who picked up the children.

Q And she picked up the children at headquarters?

A Correct.

Q You don't know whether she had any conversation about anything unrelated to the two children with any representative or member of the Westchester County Department of Public Safety on May 28th, 2012, correct?

(Continued on next page so that jurat does not stand alone.)

- Timothy Hicks -

A No.

Q Thank you. We are done.

(Time Noted: 4:45 p.m.)

* * *

______________________________
Timothy Hicks

Subscribed and sworn to
before me this day
of , 2014

______________________________

# E X H I B I T S

| Plaintiff's | Description | For Ident. Page/Line No. | |
|---|---|---|---|
| 1 | Third Amended Complaint | 4 | 4 |
| 2 | Answer To Third Amended Complaint | 4 | 7 |
| 3 | Defendant Hicks' Discovery Responses to Document Request and Responses to Interrogatories | 4 | 10 |
| 4 | Defendants' Disclosures Pursuant To Rule 26(a) | 4 | 14 |
| 5 | Notice of Claim | 14 | 23 |

## D A T A   R E Q U E S T E D

| | Page/Line No. | |
|---|---|---|
| Production of the document that was received in mailbox | 18 | 6 |
| Production of any radio call that was made by the witness requesting female backup on May 28th, 2012 | 33 | 4 |
| Advise us as to the date on which video was removed from the database | 48 | 24 |
| The name of the desk officer that Officer Hicks spoke to | 119 | 11 |

## R U L I N G S   C O N T E M P L A T E D

| | Page/Line No. | |
|---|---|---|
| Q   Social? | 55 | 14 |

STATE OF NEW YORK )
) ss.
COUNTY OF ROCKLAND )

I, Gale Salit, a shorthand reporter and Notary Public within and for the State of New York, do hereby certify:

That TIMOTHY HICKS, the witness whose examination is hereinbefore set forth, was duly sworn by me and that the transcript of said examination is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of April, 2014.

Gale Salit

Gale Salit
Shorthand Reporter

Errata Sheet

NAME OF CASE: SHERRIE DEANDA -against- TIMOTHY HICKS, ANGELA CORPORALE

DATE OF DEPOSITION: 03/31/2014

NAME OF WITNESS: TIMOTHY HICKS

Reason Codes:

1. To clarify the record.
2. To conform to the facts.
3. To correct transcription errors.

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

_______________________

**$**

**$100** 92:16

**$1200** 81:23

**$1266** 93:23 94:20,21 95:3,9, 13,20,23 96:5

**0**

**05** 58:20

**1**

**1** 4:5 5:2 44:11 97:18

**10** 124:11

**10532** 5:3

**11** 125:12

**119** 125:12

**13½** 91:14

**14** 124:14,15 125:18

**15** 35:11

**16** 31:2

**18** 125:6

**2**

**2** 4:8 44:5 45:4 51:24,25 99:13

**2005** 54:24 56:6 59:19

**2006** 56:6,8 59:19 61:17

**2008** 56:8,10,25 61:18 63:8

**2012** 8:19 10:13 11:12 12:10,14,16 16:4 18:18 19:6,20 20:3 21:2,24 24:12 25:18 33:3,18,23, 25 35:20 36:9,12, 18 40:16 46:2 47:8 57:12,22 58:4 69:9,16,20,25 70:3 71:7 73:19 74:9 75:4,22 76:5 79:3, 10,14 80:7,10 81:19 82:7 83:18 84:19,22 101:6 103:16 112:25 114:11,17 115:2,8, 17 121:12,17,21, 25 122:8,19 125:9

**2014** 123:10 126:19

**21** 31:7,8,10,13,16 36:24

**21st** 126:19

**220** 69:17

**220.002** 74:12

**220.09** 75:6,24

**23** 124:15

**24** 125:10

**25th** 12:16 13:5

**26** 7:7,13 63:25 64:19

**26(a)** 4:15 49:6,16 100:24 124:14

**26-week** 63:14 64:11,12 69:2

**27** 33:18,22

**28** 55:10

**28th** 8:19 11:12 12:10,14 16:4 18:18 19:6,20 20:3 21:2,24 24:12 25:18 33:3,25 35:20 36:9,12,18 40:16 43:25 46:2 47:8,21 57:12,22 58:3 69:9,16,20,25 70:3,15 71:7 73:19 74:9 75:4,22 76:5 79:3,10,14,21 80:3,7,10 81:19 82:7 83:18 84:4, 19,22 101:6 103:16 112:25 113:21 114:11,16 115:2,8,17 117:7 121:3,11,17,21,25 122:7,19 125:9

**2:30** 120:17

**3**

**3** 4:13 50:5 51:23, 24 116:6 118:14 120:10,11,12,15 124:11

**30** 20:10,11,14,18 34:15

**33** 69:3,24 70:16 71:10 125:7

**3305** 69:6,10,14 70:4,16 71:8 72:23 73:20 75:6,25

**360** 88:4,11

**4**

**4** 4:16 7:15 49:2,4, 5 50:2 51:24 97:20 124:8,9,11,14 125:7

**40** 85:15 91:10

**48** 125:10

**48.02** 74:16,20,21

**4:45** 123:4

**4th** 76:7 79:5

**5**

**5** 14:22,24 33:7

**50-h** 53:5,20 82:15,21

**55** 125:18

**6**

**6** 125:6

**60** 58:19

**6:30** 120:16,17

**7**

**7** 120:10,11,12,15 124:9

**7/14/85** 55:12

**70** 85:15 86:24 87:5

**72** 57:15

**7:51** 30:6,7,22

**7:56** 30:23

**8**

**8:12** 29:5

**A**

**a.m.** 30:6,7 120:10

**absolute** 28:13

**absolutely** 6:25 42:21 48:23 85:4 119:25

**academy** 59:22 63:14,15 65:11 66:7 69:2

**account** 16:8

**accurately** 43:24

**accusations** 29:13

**accusatory** 103:18,20,22,25

**Acres** 55:7

**acting** 59:22 78:5

**action** 18:16 113:19 126:15

**activated** 20:15 85:16 86:5

**actual** 15:15 86:13 103:21

**add** 94:10

**addition** 95:14,17

**address** 4:25

**adjust** 104:13,14

**admissible** 72:20

**admit** 52:3 113:21

**admits** 45:8 100:15

**admitting** 45:12

**advise** 48:2 113:5 125:10

**advised** 30:2 102:14,15,17,21 109:10 114:8 121:5,14

**advisement** 18:8 48:20

**agency** 66:19

**agents** 70:8 71:13

**agree** 12:20

**ahead** 70:23 73:11 74:8 75:13 88:23 92:13 118:3

**allegations** 43:11 45:9 52:4 100:13, 18

**alleged** 44:24 100:4

**alleges** 99:21

**allowed** 67:15

**amber** 87:17,20

**Amended** 4:4,7 44:12,16,25 45:10 51:7,18,19 53:20 83:25 99:20 100:14 124:8,9

**amount** 95:19 96:14

**Angela** 24:7 28:6, 7,8 41:20 54:13 93:14 116:18

**answering** 93:6 111:11

**anticipation** 7:23

**apologize** 116:3

**appearance** 54:2

**apply** 70:7 71:12, 17,20 72:23 73:2, 16,22 76:4

**approached** 85:17 98:3

**approval** 102:3 103:13

**approximately** 35:11 36:24 62:8

120:7
**April** 126:19
**areas** 94:3
**argument** 72:3
**argumentative** 72:2 73:6,8
**arising** 10:16
**Aronwald** 4:2 5:5 6:22 7:6, 8:10 14:21 15:22 18:3, 10 31:12 32:24 33:5,13,17,24 40:3,10 46:5,8,10, 14,17 47:6,12,18, 25 48:6,12,21 49:17,20 50:23 51:6 52:16 54:8 55:17,23 56:3 67:12,17 70:13,19, 23 72:4,12,21 73:7,14,24 74:5,21 75:10,13 78:23 82:17,24 83:4,8, 11,16 92:4 93:2,5, 25 94:6 97:15 99:9 100:8 104:10 105:18 107:25 108:9,14,20 109:2 111:6 116:9 117:11,16,19,24 119:4,14,18 122:4
**arraignment** 116:21
**arrest** 6:7 8:22 10:17 13:6 14:13 16:4 23:3,12,16 24:9,11,15 29:5 30:2,11,13,24 39:12 62:24 64:14, 21 76:17 77:23 78:17 79:9,22 81:21 83:17 84:24 93:22 95:25 98:21 101:12,14 102:2,4, 8,16 103:12,13,14 106:17 109:11 110:7 114:2,18 115:2
**arrested** 19:3 44:22 45:14 79:10 81:6 82:7 84:4,17 89:18
**arrestee** 27:22
**arresting** 10:21 18:19 25:11 61:10 80:16,20 81:14 84:9
**arrests** 60:23 61:3,7,21,23,24 62:2,3,6,14 76:6, 20,21 77:8,11,15, 25 79:4,15 80:2,6, 13 81:2 84:8
**arrive** 29:8,9 31:11 89:21
**arrived** 28:8 29:3 31:17 36:23 41:2 42:5,18 85:6 90:16 102:25 120:2
**Article** 69:3,24 70:16 71:10
**assign** 57:25
**assigned** 56:20 57:2,10,13,19
**assignment** 57:21 58:3
**assignments** 56:16
**assist** 89:14
**assistance** 109:14
**assisted** 80:14
**Associate's** 54:17 58:8
**assume** 13:2
**assuming** 76:19 86:21
**attention** 27:14, 17
**attorney** 6:15 7:20 9:3 33:9,12, 16 38:11 43:22 52:11 53:15 54:3, 7,9 100:23 103:18, 25 104:3,8,12 113:18 116:14 118:18
**Attorney's** 6:8 114:14
**attorney/client** 50:21 52:14
**audio** 9:15,21 10:15 19:11,21 22:6 35:12,16,17, 19,21,24,25 36:10, 14,15,18
**authorization** 102:3
**Auto** 60:15
**automatically** 12:4 20:23 21:16 48:9,11
**automobile** 44:22 45:14
**avoid** 29:13
**awaiting** 89:21
**aware** 14:10 69:16,25 70:3,9, 14,15 71:6,15 73:19 75:4 116:13, 23

**B**

**back** 21:5,14,15, 21 22:2,5,14 23:17,19 26:24 27:2,16,18 28:3,9 31:12 33:25 34:9, 22 39:6 40:8,23 41:12,20,24 42:3, 4,13 83:15 85:6 86:4 88:9,11 89:13,18,23 90:3, 4,8,25 91:3 93:13 94:18 96:20,23 97:11 100:22 102:23 106:16 108:8,10,15,16 115:17 117:11,21 119:13,15 120:23 121:8
**backup** 29:10 31:3,18,24 32:12, 14 33:2 125:8
**backward** 21:13 40:20
**based** 35:12 105:8,12 113:17
**basically** 55:23 58:13 60:7 118:18
**basis** 72:22,25
**began** 20:2, 22:18 57:22 85:5
**begin** 19:14 20:7
**beginning** 20:18
**begins** 34:15
**behalf** 44:8 99:13 113:18 116:14 118:23
**belong** 98:11,16
**belonged** 81:7,14 98:5 99:23 100:16 106:7 110:10,22 112:11 113:23 115:12
**Bill** 79:2
**bills** 92:16,17,19 93:9,19 94:25 95:4,10,15 96:10, 15
**birth** 55:11
**bit** 50:21 73:5
**black** 82:10 83:22 84:9,20
**blank** 119:22
**blood** 126:15
**blue** 87:14,20
**Body** 60:16
**book** 16:8
**booking** 102:20
**bosses** 120:24
**bottle** 87:12,13, 15,20,24 88:3,4,7, 8,13,15,18,19,21 89:7 91:10 94:13
**break** 78:4
**bring** 102:22
**broad** 101:10
**Bronx** 56:21 57:10,13,17,19,21 58:2 85:9
**brought** 12:13
**brutality** 10:22
**bunch** 77:11 91:23
**button** 21:3

**C**

**calculates** 86:20
**call** 32:22,25 107:10 125:7
**called** 60:3 74:2 89:14 91:4 102:14 106:3
**calling** 18:3 47:6 83:3
**calls** 32:17 75:8, 17
**camera** 20:7 21:3, 10,11,12,14,15,22, 25 22:2,5,8,18,21 34:2,3,12, 35:15, 25 36:14 40:23 86:4,5,8
**cameras** 22:13 34:8
**capacity** 77:15 78:6
**Caporale's** 8:14 26:11,14 28:24
**captured** 35:23, 25
**captures** 9:15
**capturing** 34:17
**car** 9:20 19:17,21 21:7,11,12 22:11, 24:15,18,19,21,22, 23,24 25:3,5,6,9, 10,12,14,17,23 26:2,9,16,25 27:3, 8,15,16 28:3,24 30:4,8 34:5,19,23 35:9 37:13,16,20 39:21 40:16,22 41:4, 42:12,13 47:8,21 57:15 86:6,11 89:13,20, 24 93:22 96:16
**care** 97:8,9 107:18

**carrying** 42:7

**case** 5:8,11,20,25 6:4,6,9,13,16,18, 20,23 7:19 9:3 12:21 13:17 26:7 28:22 39:19 43:2,3 44:8 47:2 53:4,16, 19 54:4 101:12 103:22 104:13,17, 18 114:12 115:8

**cases** 80:15,19,24 81:5 82:6 83:17

**cash** 81:23,25 91:21 93:6,9,20 114:21,24

**catch** 87:2

**center** 92:9 94:23 96:19,21

**certainty** 28:13

**certified** 66:16

**certify** 126:1,14

**chance** 9:25

**change** 57:24 104:13

**CHAPMAN-LANGRIN** 6:25 7:8,12 8:9 10:8 11:2,15 12:24 15:19 18:7 26:18 31:5,9 32:7 33:11, 14,20 37:21,25 39:22 40:6 45:20 46:3,7,9,12,16,19, 24 47:10,14,23 48:4,7,19,23 49:15,18 50:20 51:4,14,21 52:13, 24 53:12 54:6 55:15,19 56:2 59:24 65:4,6,9 67:3,10,14 70:11, 17,21,25 71:22,25 72:7,9,18,24 73:11 74:4,7,19 75:7,11, 15 77:9,13,20 78:7,21,25 82:11, 20 83:2,6,10,14,23 84:11 92:2,23 93:4 94:8 97:14,16,22 98:25 99:4,16,19 100:6,10 104:6 105:14 107:20,23 108:5,11,17,22 109:5 111:3,11,18 112:4,22 116:8,10 117:14,17,22 118:3,8,16,24 119:12,16,25 121:6 122:2

**charge** 83:18

**charged** 91:15

**charges** 12:13,14, 17,22 13:3

**charging** 79:22

**check** 19:15

**checked** 89:15

**children** 26:8,11, 17 27:16 39:6 40:22 41:3,11,19, 23 91:2 93:15 97:8,10 102:21 107:18 109:13,15, 17,18 121:16,20 122:3,11,12,17

**children's** 28:11

**chose** 82:25 83:12

**circumstance** 120:20

**circumstances** 20:4 24:9 43:25 102:8 110:5

**city** 12:15,21 13:4 85:9,12,14 115:19, 23 116:21,22 118:7,22

**claim** 13:11,17 14:11,23 15:4,17 16:2,11,14,16,18 17:12,19 18:10,12, 13,15 19:2 33:8,15 82:19 94:14 124:15

**claimed** 72:15,16

**claims** 10:20 25:12

**clear** 29:20 37:4 40:14 45:23

**clerk** 33:21,23

**client** 82:22

**clipped** 35:17

**close** 14:6 27:11, 13

**co-defendants** 54:13

**College** 54:20 59:9

**color** 68:11 87:15, 16

**commanding** 102:3,9

**commented** 118:8

**communications** 30:2

**Community** 54:20 59:9

**complaint** 4:4,8 5:13,14,17,18 8:4 28:22 43:6,11,15, 22 44:12,17,18,25 45:10 51:7,18,20 52:5,19,23 53:19, 20 82:13 84:2 97:11,13,14,15,19, 99:21 100:4,14 104:4,13,14,15,19, 24 105:12,16 106:14 124:8,10

**completed** 109:3

**complied** 89:25

**comply** 83:9

**Complying** 44:19

**concern** 97:9 107:17 109:12

**concession** 33:6

**conclusions** 75:9

**conduct** 29:12 47:16

**conducted** 24:25 25:17,22 27:10 47:19 97:4

**confidential** 7:5

**confined** 27:2,4

**confusing** 32:8

**conjunction** 61:14

**connection** 5:8 10:6,16 14:13 39:12 42:25 46:2, 25 53:3,15 78:16 101:25 113:20 114:16 115:3

**consist** 57:5 58:18 59:2 67:9,21

**consisted** 64:17, 18 67:22

**console** 92:9 94:23 95:2 96:20, 22

**contact** 85:21 115:7

**contained** 5:25 45:9 91:10 100:13

**CONTEMPLATED** 55:14

**continued** 22:21 27:9 122:20

**continues** 9:12

**contrary** 97:24 98:23

**control** 70:6 71:11

**controlled** 61:4,8 62:4,7,15 63:5,6 65:21 68:8 69:22 70:6 71:11 76:7,17 79:5,11,16,23 80:3, 82:8 83:19 84:18 89:11 102:17 109:11

**conversation** 21:6 22:12 23:4,6, 10 106:20,23,25 107:14 108:3 109:7,15,20,21,24 110:9,17 113:2 122:16

**conversations** 52:10

**convoluted** 78:22

**copy** 6:13,16 7:3 16:10 33:7,9 122:10

**Corporale** 24:7, 10,16, 25:19 28:6, 7,8,17 29:3 31:17 36:23 38:19 39:3, 19 40:14 41:15,23, 24 42:5,18,22 54:14 90:15,21,22, 23 93:15 115:11, 15,19 116:18 118:15,20

**Corporale's** 38:5, 25 41:20 91:4

**correct** 5:23 6:17 9:11,14,17,21 10:7,10,17,22 12:11,16,23 14:14 15:18 16:4,14 17:17 20:5,9,20 21:8,9,23 22:7,19, 20,24 23:20 24:5 25:4,7,14,15,23 27:10, 28:16,18, 24,25 30:9, 31:25 32:3,5,16 34:5,12, 20 35:5,8 37:14,17 38:12 39:13,18 40:16,18 42:19,24 44:14 45:16,17 51:13 54:22 57:3, 20,23 58:5 61:16, 19,20 63:24 64:2 66:11,12,14,19 67:2,6,7 68:4,5,12, 13,16, 73:21 76:20 77:5 78:13,14 86:24,25 87:18,21 88:2,7,17,22 90:5, 6,13 91:8 92:19 95:5,11,12,16,18 97:2 100:5,20,21 101:3,4,5,21 103:24 105:10,25 106:10 111:17,20, 24 112:20 114:3 115:9,20, 121:23 122:8,14,19

**Correction** 61:7

**corrections** 50:13,24 51:2,3,8, 10

**correctly** 12:8 100:5

**counsel** 6:14,19, 22 38:9,10,22 43:10,13,19 45:18

48:7 49:13 51:9 53:10 67:16 70:21 75:12 94:2 121:5

**count** 96:13

**counted** 95:6 96:2,8,11,23

**county** 7:4 13:8 17:14 32:18 33:8, 12,16,21,23 56:7, 12,14,18 57:6,8,16 59:18 60:5,13,25 63:9,18,22 66:4,17 76:11 77:4,18 78:12 114:13 115:5 116:20,22 122:18 126:1

**couple** 119:4

**court** 12:16,22 13:4 43:7 104:5 115:20,23 116:21, 22 118:7,22

**cover** 56:21 58:2

**covered** 59:6

**covering** 57:16

**credits** 58:19

**criminal** 10:6 54:18 58:9,11,14 59:9 61:3,8 62:3,7 63:4 65:15,20,24 66:10 76:6 79:4, 11,15,22 80:3, 82:8 83:19 84:17 102:16

**cup** 91:14

**currency** 93:24

**current** 56:10

**custody** 29:16 113:8 120:3

**custom** 19:15 25:20 27:25

**cut** 101:16

D

**D.a.'s** 115:5

**DATA** 18:6 33:4 48:24 119:11

**database** 9:6 11:5,21 12:2,5,9 13:7 14:18,19 18:20 19:7 37:20 39:2 47:4,9,11,16, 22 48:3,14 125:11

**date** 10:12 13:6 14:3,7,10 16:9 33:17 48:2,10 55:11 105:2 125:10

**day** 85:3 100:2 103:6 120:9 123:10 126:19

**days** 60:8

**dealing** 80:13

**dealt** 59:14 122:9

**Deanda** 8:23 12:14 13:12 14:14 15:18 16:3 18:19 19:4 20:2 22:11 27:22 28:14 29:3, 15,23,24,25 30:21 36:25 41:10,13 42:7,23 43:7,16 53:5 71:8,16 75:23 79:10 81:22 84:25 85:21 89:3 90:19 93:21 96:20 97:4 102:2 106:6 107:16 113:5,23 114:8 115:4,11,18 116:19 118:6,22 119:21 120:3

**Deanda's** 26:16 107:7

**decided** 30:10

**decision** 81:21

**deem** 98:23

**defendant** 4:10, 17 43:2 44:21 50:6 82:9 83:21 84:20 94:11,18 100:14 110:6 116:15 124:11

**defendant's** 7:11 49:5,15

**Defendants'** 124:14

**definition** 74:11

**definitions** 69:22

**degree** 54:17,23 58:8 71:21,24 72:6,8,10,17 73:3, 12 76:7 79:5

**degrees** 88:4,11

**deleted** 11:22

**delivering** 81:7

**denies** 100:18

**denying** 110:12, 25 111:14,21,22 112:18

**Department** 13:8 32:19 56:11,12,14 63:9,18,22 66:4,18 74:16 76:10 77:5, 18 78:12 101:19 122:18

**deputy** 56:7 59:18 60:2,24 76:15 77:2,16 78:10

**describe** 84:23

**Description** 124:6

**designate** 39:11, 14

**designed** 25:6 66:24

**desk** 102:14 103:3 106:23 119:8 120:4,5,11,21,22 125:12

**destroyed** 10:25

**destroying** 17:8

**detective** 103:21 105:7,8,11,15 106:13 113:11 114:25

**determination** 29:15 30:12,23

**determine** 42:14 66:25 68:19 72:21

**determined** 29:25

**device** 19:21 35:13

**devoted** 69:3

**diaries** 16:8

**directly** 35:2 37:3 99:6

**disable** 19:11

**disagree** 46:14

**Disclosure** 49:16

**Disclosures** 4:14 49:5 124:14

**discovered** 91:23

**discovery** 4:10 7:7,11 50:6 116:15 124:11

**discretion** 39:20

**discuss** 102:7 114:12

**discussion** 13:3

**discussions** 52:18,21 54:4,12

**dismissed** 12:15, 18,23 13:4

**disposing** 17:8

**District** 6:8 9:3 11:9 103:17,25 104:3,8,12 114:13

**division** 7:4 56:21,23,24 57:2,5

**document** 4:11 7:2 15:3 16:17,20, 23 17:9,20 18:4 31:23 44:9 49:7,19 50:7,9 51:3,13,16 52:3,6 92:7 94:4 103:17 104:5,19 116:7,14,16 118:13,19 124:12 125:6

**documents** 4:3 5:7,10,24 8:5 28:20 32:5,10 53:3,9,14,18 94:3 104:18

**dollar** 92:17,18 93:8,19 94:25 95:4,10,15 96:10, 15

**door** 91:7

**doorjamb** 91:13

**draw** 103:20,22,25

**draws** 103:18

**DRES** 66:11

**Drive** 85:11

**driver's** 85:22,25 89:13,16 91:7

**driving** 86:9,20

**drug** 62:15,21 63:6 66:3,5,8,10, 13,16,23 67:8 68:4,7,20 79:17,24 80:4, 82:9 83:20 84:19 98:18

**drugs** 65:24 66:6 67:2,23,25 68:8

**duly** 4:18 126:11

**Dutchess** 54:20 56:7 59:9,18 60:5, 13,25 66:4

**duties** 17:13 57:4 78:15,19 104:7

**duty** 120:4,23

E

**earlier** 52:8 120:13

**earrings** 93:12

**educate** 86:17

**education** 54:16 55:2 58:21 73:4

**Eighth** 63:16

**elaborate** 58:13

**emergency** 85:16

**emotional** 55:20

**employed** 56:6,9, 11

**employees** 70:8 71:13

**employment** 56:5,13,17 60:14, 19

**encompass** 57:16

**ended** 109:15

**engage** 21:16 23:4

**English** 58:21

**ensure** 18:16 42:6

**entire** 6:7 57:16 88:3 109:19,21,24

**entitled** 48:13,18 70:8 71:14

**entity** 63:21

**entry** 16:7 31:22

**equipment** 19:16

**equipped** 8:15

**erased** 10:25 11:22

**essentially** 9:18

**event** 20:23 103:10

**events** 101:11

**evidence** 39:5,12, 21,24 40:4,7,11,16 46:22 72:19,20 114:17,19,24

**exact** 15:7

**examination** 5:4 126:10,12

**examined** 4:20

**excess** 95:20

**Excuse** 31:7 46:5 49:20 122:4

**executed** 102:4

**exemptions** 76:3

**Exhibit** 4:5,8,13, 16 7:15 14:22,24 33:7 44:5,11 45:4 49:2,4,5 50:2,5 51:22,23,25 97:17 99:13 116:6 118:14

**exhibits** 74:22 116:5

**existence** 32:22

**exit** 89:17 90:19

**experience** 17:16 88:24

**expert** 66:14,17

**experts** 66:11

**explain** 59:24 85:4 96:12 103:2

**explained** 99:22

**extent** 47:9 119:7

F

**faces** 21:25 22:2

**facing** 22:5 34:9 40:19,20,21

**fact** 11:14 19:17, 22 27:25 33:7 47:3 80:16,20 81:22 97:24 103:11 106:6 116:13 118:25

**facts** 54:4 102:7 114:12

**fair** 77:14

**false** 29:13

**falsely** 19:3

**familiar** 69:9,13 74:15 75:2

**fast** 87:2

**Federal** 43:7 72:12

**feel** 73:2

**feet** 35:11

**fellow** 24:4

**Felony** 5:13,14, 17,18 8:4 28:22 53:19 104:14,19, 24 105:12,16 106:14

**female** 29:11,12 30:3,15 31:3,24 32:12 33:2 83:21 89:14,21 90:17 102:18,20 103:4 116:18 125:8

**fifteen** 97:19, 99:20 100:7,13,19

**fight** 46:17

**figure** 96:15

**file** 5:11,20,25 6:4, 6,7,9,13,16,18,23 7:19 8:3 28:22 53:19 104:18

**filed** 13:11,17 14:11 17:12 19:2 43:7,15 44:8 99:12 104:5 118:18,23

**fill** 60:3,21

**find** 97:7 107:17 118:4

**fine** 26:24 27:4,5, 6,9 78:20 83:8 93:2 119:17

**finish** 70:22 75:11 117:16

**finished** 70:24 71:2

**flashing** 41:3

**floor** 91:12

**fluctuated** 60:9

**fluctuates** 60:9

**focus** 65:3

**focused** 27:15,17

**focusing** 58:22 93:17 116:4

**follow** 119:20,23

**follow-up** 119:5

**Fontanette** 98:5, 6 99:24 100:16 106:7,8 107:2,8, 11,14,15 108:4 109:8,25 110:8 113:3 115:12,13 121:2,12,19,21,24 122:6

**force** 86:14,17,19

**forces** 86:11

**forget** 24:8 86:3

**form** 11:3 15:7,15 16:6 32:9 37:23 38:2 39:23 51:11 53:13 67:4,15,16 72:14 77:10 111:19 112:5,23

**formal** 103:18 104:4

**forward** 21:12 34:10,12 40:22

**forwarded** 103:17,24

**found** 85:24 95:15 96:21

**framed** 108:24

**Friday** 8:2 38:6 53:8,10,15

**front** 7:3 21:21,25 34:5,9,18 49:3 95:6 96:3

**frontward** 40:20

**full** 4:21 59:22 60:4

**full-time** 61:15

**fumbled** 85:23

**fumbling** 87:11

**function** 19:11 22:6 35:12 101:7, 9,10

G

**Gale** 4:18 126:1, 23

**gave** 6:15 33:9 38:8 45:18 105:9

**general** 9:4 18:22, 23 74:16 75:2

**give** 89:7

**graduate** 55:4

**gratuitous** 72:22 78:24

**Greer** 13:25

**guardian** 102:25

**guess** 23:13 31:21 65:4,9

**guide** 39:9

H

**hand** 126:19

**handcuffed** 28:2, 5,6 41:16 44:22 45:14 90:21

**handcuffs** 27:23 28:14 41:10 89:20

**handed** 16:14 49:24 89:4 122:9

**handful** 80:12

**handing** 49:13

**handled** 80:12

**happen** 7:2 14:5 81:18

**happened** 66:6 85:2 98:21,24 101:12 112:7

**happy** 50:19 74:22

**Hawthorne** 23:3 85:7

**head** 62:9,23 80:18

**headquarters** 6:11 12:2 21:5 22:23 23:3,12,19 24:4 85:7 93:14 94:18 102:23 106:19 110:21 112:13 116:20 120:2,23 121:4,12, 22,25 122:7,13

**Health** 69:3,6,11, 14,24 70:4 71:9 75:6 76:2

**hearing** 53:5

**held** 13:15 119:3

**hereinbefore** 126:10

**hereunto** 126:18

**Hicks** 4:23 5:1,6 44:1,21 100:1,14 119:1,8 123:1,7 125:12 126:1

**Hicks'** 4:10 50:6 99:21 116:15 124:11

**high** 55:4,6

**highest** 54:25

**Hispanic** 82:10 83:22 84:10,20
**history** 56:5
**holder** 91:14
**home** 100:2
**Honestly** 86:10
**hour** 85:15,16 86:21,24 87:5
**hours** 60:8,10 64:24
**hundred** 88:6
**hundreds** 77:25
**hydrochloride** 89:3

**I**

**ID** 122:10
**Ident** 124:5
**identification** 4:6,9,13,16 7:15 14:24 49:3 50:5
**identified** 107:2
**identifies** 116:17
**identify** 67:23 107:4
**illegal** 91:15
**image** 19:12
**immediately** 89:2
**impounded** 93:20
**inadvertently** 99:25
**inception** 54:11
**incident** 5:15,22 6:2,5 10:12 48:10 92:5,10 100:22,24, 25 101:8,11,18,22 103:16 105:12,22, 23,24 106:2 112:24
**incidental** 70:7 71:12
**include** 5:21 65:24 106:5,9
**included** 53:2 68:14 95:3 104:17 114:21
**incorrect** 32:6
**independent** 79:8 81:12 84:7,15
**influence** 67:2 68:20
**information** 75:17 103:12 104:4 105:9 106:12 117:2
**informed** 16:15 81:22 98:8
**informing** 103:11
**initial** 103:23
**initiate** 20:12
**inside** 36:3,4 44:23 45:15
**instances** 84:16
**instruction** 64:3 65:12,19,23 66:22
**instrument** 103:19,20,22 104:2
**interested** 126:16
**interjecting** 117:18
**Interrogatories** 4:12 50:8 116:17 124:13
**interrupt** 86:2
**interrupted** 117:24
**interrupting** 48:8
**interviewed** 113:14
**inventoried** 24:24 91:22 96:18
**inventory** 25:2,5, 16,17,21 26:2,5,8, 10,16 27:10,24 91:5,6,19 93:17 94:16
**Investigations** 13:24
**involved** 24:14 61:7
**involving** 76:7,17 79:5,12,23 80:4, 82:9 83:20 84:18
**irrelevant** 98:22 110:5
**Island** 56:10 61:19
**issue** 59:11,14 64:8,13,20
**item** 62:16,22 68:7 80:4,9 81:8,15
**items** 68:4 81:6 85:24

**J**

**Jail** 116:22
**job** 104:7
**Judge** 74:5
**July** 12:16 13:4 33:18,22
**jurat** 122:21
**justice** 54:18 58:9 59:10

**K**

**kids** 23:18,21,25 24:3 26:13,23,24 27:2,6
**kind** 119:20
**knew** 18:25 89:17
**knowledge** 11:11 75:18

**L**

**label** 87:25 88:13, 15,20 94:13
**labelled** 39:20,24 40:4,7 104:19 116:15
**lane** 35:4
**Langrin** 83:3,4,11 93:3 108:14 111:6
117:2 122:5
**law** 58:11,12,15, 16,18,23 59:2,3,4 65:13,16,19,20 69:3,7,11,14,18, 21,24 70:4 71:9, 21,24 72:6,8,10,17 73:3,12 74:11,13, 16 75:5,6,24 76:2
**lawfully** 70:8 71:14
**lawsuit** 19:2 54:11
**lawyer** 50:11 75:16 121:10,15
**lead** 72:19
**leading** 102:8
**learned** 13:10
**leave** 119:6
**ledgers** 16:8
**Leeward** 85:10
**left** 35:3,4 38:11 81:8,16 100:2 119:22
**legal** 72:14,15 75:8
**level** 54:25
**license** 85:22,25 87:10 89:14,16 94:11
**lights** 9:9,19 20:5, 8,13,14,17,19 21:17 22:19 34:3, 11,15,16 35:7 37:9 41:2 85:16 87:7
**lines** 10:22
**listen** 121:7
**litigation** 10:16
**located** 91:7 92:8 94:13,21,25
**locked** 27:20,21
**long** 13:18 29:2 30:16 32:17 40:25 57:9,13 61:19 63:13 92:24 109:21
**longer** 9:6 25:13
**looked** 53:3
**lot** 112:7

**M**

**made** 10:14,15 18:17 19:6 28:23 29:15 30:12,23 32:25 37:12,15,19 38:5,25 39:20 40:15 45:25 47:7, 20 48:22 50:24 51:2,10 62:24 63:4 76:6,21 77:8,11, 15,23,25 78:17 79:4,15,22 80:7,25 83:17 103:11 119:21 125:8
**mailbox** 16:17,20, 24 17:9,20 18:5 125:6
**maintained** 32:18
**make** 14:17 16:7 18:11 19:5,15 27:8 30:2 36:9,13 43:24 50:12 51:8 60:23 61:21 62:6 64:14 70:20 72:2 75:8 80:2 90:17 92:10 94:14 103:13 109:3 113:11,25 116:4
**makes** 112:25
**making** 26:22 36:9,13 102:16 103:14
**male** 83:21 103:3
**males** 103:5
**maliciously** 19:3
**Manhattan** 100:3
**manually** 20:21, 24 21:3,18,20 22:22 40:23
**mark** 45:25 46:21 56:3
**marked** 4:3,5,8, 12,15 7:14 14:21, 23 39:5 40:15 44:5,11 49:2,25

50:4 97:13,17 116:5

**marriage** 126:16

**married** 58:6

**Matt's** 60:15

**matter** 110:7 126:17

**means** 69:23

**mechanically** 12:5

**medical** 55:21

**medication** 89:11 114:5

**meet** 43:10,13

**member** 63:8 76:10 77:3,4 78:11,12 122:17

**members** 64:4

**memo** 16:7

**mental** 55:20

**mentioned** 31:13

**mile** 85:15

**miles** 85:15 86:21, 24 87:5

**Mill** 5:2

**Millbrook** 55:6

**mine** 37:3

**minimal** 23:5

**minutes** 29:7 30:13,17,18,19,20 31:2,7,8,10,14,16 36:24 41:7 109:23 117:12

**Miranda** 113:6,9, 16 114:9

**mistake** 81:9,16

**moment** 14:25 15:24 42:20

**money** 92:8,11 95:5,8,17,19,22,24 96:3,7,11,12,14, 19,21,24

**Monique** 121:19

**months** 9:5 11:4, 5,24 12:4,10 13:5 48:9,10

**morning** 119:22 120:8

**move** 73:14

**moving** 73:24 86:11

**multiple** 80:13

## N

**narcotics** 67:23

**narrative** 106:3,5, 10

**narrow** 52:20

**nationalities** 84:3

**necessarily** 120:24

**needed** 30:3 60:4, 21

**noncompliant** 109:14,16 112:9

**nonresponsive** 73:16

**north** 85:10

**Notary** 4:19 126:1

**note** 10:8 11:2 26:18 39:22 45:20 53:12 55:15 67:3 71:22 82:11 83:24 84:11 104:6 111:3, 18 112:4

**notebook** 8:6,8, 12 31:22

**noted** 94:8 104:11 123:4

**notice** 13:11,16, 25 14:2,5,7,8,11, 23 15:4,17,25 16:2,10,13 17:12, 19 18:10,12,15 33:7, 124:15

**notified** 16:17,22

**number** 60:7

## O

**object** 48:4 52:14 67:15 72:20 94:6 105:17

**objected** 67:15

**objecting** 37:23 38:2 46:19 55:24

**objection** 10:9 11:3,15 26:19 31:5 32:9 39:23 45:21 52:24 53:13 55:16 67:4 71:23,25 72:7,9 74:4,6,8 75:7 77:9 82:12 83:24 84:2,12 99:4 104:7,10 111:4,8, 9,19 112:5,22

**observed** 25:23 85:8,14 87:12 88:25

**obtained** 11:6

**occasion** 81:13, 18 114:12

**occurred** 41:9 84:23 109:6 120:7

**occurrence** 20:23

**offered** 107:16

**offhand** 74:18

**office** 6:8 38:15 56:8 114:14 115:5

**officer** 5:6 8:14 17:13 24:4,6,10, 16,19 25:11,19 26:11,14 28:17,23 29:3,11 30:3,15 31:3,17,25 32:12 36:23 38:5,19,25 39:3,11,19 40:14 41:15,23,24 42:5, 17,21 60:5 61:11 68:18 76:22,23,24, 25 77:17,23 78:10 80:16,20 88:25 89:14,21 90:15,21, 22 101:23 102:4,9 103:2,3,8 104:15 106:24 115:10,14, 19 116:17,18

118:15,20 119:8,9 120:4,5,21,22 125:12

**officers** 24:11,14 25:21 26:2,5 120:12

**official** 17:13 78:5 101:19

**operate** 39:10

**operates** 9:8 19:10

**operating** 9:23

**operation** 8:21

**operational** 8:18 9:21

**operator** 29:17,19 85:18,19

**opinion** 67:18

**opportunity** 43:23 53:4 113:15

**opposed** 73:2

**orange** 87:16

**order** 19:17,22 75:2

**ordered** 44:21 45:13

**orders** 9:4 18:22, 24

**ordinary** 120:20

**outcome** 126:17

**overhead** 20:4

**Oxycodone** 68:15 76:8,18 79:6,12 89:2 91:8, 9,10,11 97:6 98:4, 9,12,13 99:23 110:2,9,18 115:12

## P

**p.m.** 120:10 123:4

**pacing** 87:4

**Page/line** 124:6 125:3,16

**painter** 60:15

**paragraph** 44:17, 20,25 45:5,8,9 52:4 97:19,20 99:14,16,18,20 100:6,11,13,18

**parent** 102:25

**park** 34:22 56:9 57:7 61:18 62:25 63:20 66:7 76:16 77:3,17 78:11

**parkway** 5:3 56:22 57:7,10,14, 17,19,22 58:2 85:9

**parlance** 66:10

**part** 19:19,24 56:23,24 57:4 59:8,20 60:22 64:7 85:13

**part-time** 56:7 59:18,21 60:2,13, 20,24 61:14 77:2, 16 78:10

**parties** 126:15

**party** 11:7

**passenger** 41:14 90:19

**pat** 42:9

**patrol** 7:4 19:17, 21 27:18,20 28:10 30:14 39:9 56:20, 23,24 57:2,4,10, 13,19,21 90:20 91:2 93:16

**patrons** 57:7

**patted** 90:20

**Paula** 98:5,6 99:23 100:16 106:7,8 107:2,8, 10,14,15 108:3 109:8,25 110:8 113:3 115:12 121:2,12,18,21,24 122:6

**paused** 108:23

**Pavone** 54:13 105:7,8,11,15 106:13 113:11 114:25

**peace** 76:22,23

**Penal** 58:11,15, 18,23 59:2,3,4 65:12,18,20 69:18, 21 74:11,13 75:5, 24

**pending** 12:21

**people** 84:4 102:19

**perform** 68:19

**period** 11:12 12:10 22:25 23:11 26:15 59:19 60:12, 24 61:17 64:13 65:2,10

**permitted** 117:20

**person** 10:20,24 35:13,17 65:25 81:5,8,13 84:9 93:21 102:19 107:5, 109:7 118:15,21

**person's** 29:22

**personal** 81:2

**persons** 70:8 71:13

**persuing** 86:23

**perusing** 15:3 44:9 92:7

**phone** 16:23 51:10 52:12 102:14 107:5,16

**physical** 58:20

**pick** 23:18,21,25

**picked** 122:10,12

**picking** 122:3

**picture** 34:17

**pill** 87:12,13 91:9, 10,11,18 94:13

**pills** 87:14,19 88:25 89:4,6,9 91:7,9,11 94:12 98:4,7,8,10,15 99:22,25 100:15, 17 106:6,9 110:2, 9,18,22 111:23 112:11 113:23 114:22,23 115:12

**place** 21:7 29:16 107:10

**places** 57:25

**plain** 87:13,23 88:4, 91:14

**Plains** 115:19,23 116:20,22 118:7, 22

**plaintiff** 5:19 9:20 28:9 29:21 43:19 44:21 45:13 99:7, 22 100:15

**plaintiff's** 4:5,8, 12,16 6:19 7:15 14:22,24 33:6 44:5,11 45:4 49:2, 4 50:2,5 51:23,25 97:13,17 99:13 100:2 116:6 118:13 124:6

**pleadings** 43:3,4

**pocketbook** 94:12

**point** 20:2 60:16, 18 89:9 121:3

**pointing** 94:3

**police** 8:13,14 9:20 10:21 17:13 18:17 22:11,15 26:11,14,25 27:3, 8,12,14 32:15 34:5 39:2 40:15 44:23 45:15 47:8,21 56:9 57:6 59:22 60:4 61:19 63:2,18,20 66:7,9, 68:18 76:16,24,25 77:4, 17,23 78:10,11 85:6 88:25 89:13, 19,20,24 90:15 103:7 116:17,20 121:22 122:6

**politeness** 83:5

**portion** 31:13 36:2 58:22 73:15

**portions** 10:15 59:3,5

**position** 87:24

**positioned** 35:10 36:25

**positions** 77:7 78:16

**possession** 17:21,24 38:22 42:14 61:4,8 62:3, 7 63:5 65:21,24 70:5,7,9 71:11,13, 14 76:6 79:4,11, 15,23 80:3,8 81:17,23 82:8 83:19 84:17 102:16 109:11 114:6

**possibility** 14:12

**posts** 57:24

**potential** 18:13, 25

**practice** 19:15,19, 24 25:20 27:25 36:8,13

**precisely** 23:15

**preparation** 28:20 43:14 52:11, 19,22 113:20

**prepare** 104:4 105:8,11,16

**prepared** 10:5 32:11 43:22 101:2 104:24 105:6,13, 22,23 106:2,13 110:20 112:25

**prescription** 62:15,21 63:6 65:24,25 66:5,6 67:25 68:4,6,7,8 79:17,24 80:4,9 81:14 82:9 83:20 84:19 88:8 89:10, 12 97:5 98:6,18 99:25 100:17 106:8 110:6,17, 111:23 112:12,14 113:25 114:5 115:13

**prescriptions** 67:24 68:3

**presence** 114:9

**present** 25:21 29:13 38:16,19 56:25 102:20

**preserved** 11:14 19:12 111:10

**prevented** 82:14, 20

**principal** 60:19

**prior** 5:6 20:10,11, 14 54:2 57:12,15, 22 63:8 74:9 76:5 79:3,9,14,21 80:2, 7,10 81:18 82:6 83:17 84:4,19

**prisoner** 27:18 29:12 92:21 94:9 95:23

**privilege** 45:21 50:22 72:15,16 82:19

**probable** 59:11, 14 64:8,13,20 65:3 101:13

**problem** 50:19 90:10

**procedure** 19:20, 24 39:9 58:11, 65:15

**procedures** 66:24

**processed** 102:5, 10

**processing** 94:19

**proclivity** 82:14

**production** 18:4 32:25 47:7 125:6,7

**program** 12:3,6 54:21 58:9,23 59:10,14

**projects** 21:11,13

**proof** 110:22

**property** 25:8,10 57:8 92:22 93:11 94:9 95:23

**prosecuted** 19:4

**prosecuting** 9:3

**prosecution** 10:6 115:4

**protect** 10:20 25:11

**Provide** 57:6

**provided** 6:14,19, 23 7:6,20 53:9,14 100:23 104:18 116:25

**providing** 103:12

**provision** 69:14

**provisions** 65:20 69:17 70:5,15 71:10

**proximity** 27:11, 14

**Public** 4:19 13:8 32:19 56:11,12,14 63:9,19,23 64:5 66:18 69:3,6,10, 14,24 70:4 71:9 74:16 75:6 76:2,10 77:5,18 78:13 101:19 122:18 126:1

**pulled** 34:21,22 37:8 85:17,24 87:9

**purports** 104:20

**purpose** 101:7,9, 10 122:2

**purposes** 13:2

**purse** 85:24,25 87:12 88:5 93:11 94:14,15 95:6,8, 11,14 96:4,7,11, 13,16,22

**pursuant** 4:15 49:5,16 100:23 124:14

**pursue** 20:2

**pursued** 86:6

**pursuit** 85:5

**push** 20:24

**pushed** 21:3

**put** 9:9,18 20:4,8, 17,19 21:16 22:18 34:3,11,14 40:22 41:11,20,24 42:3, 12 90:25 91:3 96:22 119:9

**Q**

**quantify** 30:18

**quantity** 92:13, 16,17,18 93:8,19 95:3,10,14

**question** 22:16 32:9 34:14 37:24 46:6,13 49:22,23 56:3 61:13 67:11, 19,20 71:6 72:5, 13,14,25 73:8,17, 18 74:2 75:19 77:24 78:3,20 82:15,21,23 83:12, 15 84:5,13 93:7,18 96:5 101:10 105:15 107:21,24, 25 108:6,7,13,15, 19,25 111:7,13 114:25 117:12 118:5,9 121:7

**questioned** 113:7,22

**questioning** 8:22 84:24 97:3

**questions** 92:24 98:2,20 99:5,22 113:10 119:5

**R**

**racial** 82:13 84:3

**radio** 32:15,17,22, 25 125:7

**ran** 89:13

**range** 68:2

**read** 31:12 40:8 53:4,23 83:15 97:22 100:5 108:7, 10,15 113:16 117:21 121:7

**reading** 70:18 71:3

**reads** 44:20 45:8

**rear** 21:13 35:19 41:4,17 89:20 91:2

**reason** 10:5,14 17:19,23, 25:25 36:17,21 37:19 40:14 55:16,17,22 101:13

**reasons** 10:7

**recall** 13:19,22 14:2 15:16,21,25 16:21,25 17:4 22:3,10 23:9,14,15 35:22 52:7 59:13 62:9,21 64:16,22 66:6 79:7,13,18,19 80:22 81:4,10,11 84:6 102:13 104:23 106:15 109:19 110:3,11, 13,15,19,24 111:14,16,24 112:3,10,15,16,19, 21 115:16 119:8

**receipt** 33:19

**receive** 54:23 59:10

**received** 15:15 16:17,20,23 17:20 18:12,15 64:12 66:3,5,9,21 67:8 74:10 125:6

**recess** 13:15 119:3

**recharacterizing** 111:5

**recognition** 66:3, 8,11,14,17,23 67:9

**recognize** 44:7 85:19 104:21

**recollection** 15:9 17:5,7 79:9 81:12 84:8,16 118:14

**recollections** 43:25

**record** 25:6 31:23 33:5 34:15 35:17 36:15 48:21 86:5,8 93:25 101:19 126:12

**recorded** 21:8 23:7 29:5

**recorder** 8:16,18, 21

**recording** 20:14, 18,25 21:4 39:11

**records** 20:10,11 34:3 55:21 86:10, 12

**refected** 43:24

**refer** 91:25 92:3

**reference** 37:2 92:11 113:2

**referred** 5:16,21 25:2

**referring** 5:15,16 6:5,24 7:17 37:16

**reflect** 31:23 48:22 93:25

**refresh** 118:14

**refused** 113:9

**region** 56:10 61:19

**registration** 85:23 87:11 89:15

**relate** 64:7,13 69:5 98:24 99:2 106:12

**related** 58:23 75:25 109:18 126:14

**relates** 18:13, 58:18

**relating** 16:3 65:20 69:22

**relation** 76:3

**relationship** 75:5

**released** 25:14 121:17,18,20

**relevant** 18:9 98:23 99:3

**remaining** 100:18

**remember** 51:17 80:11 103:7,9

**remembered** 112:8

**remote** 35:16,21, 24 36:5,6,14,18

**removal** 48:17

**remove** 12:6 41:11

**removed** 9:6 11:4,20,21 12:4 18:19 19:7 24:23 37:20 39:2 41:13, 19,23 42:12 47:3, 21 48:3,5,9,11,14, 18 96:19 125:10

**repeat** 121:9

**repeated** 31:15 118:12

**rephrase** 38:2 78:7

**report** 5:15,22 6:2,5,7 91:25 92:3, 6,10 100:22,25 101:8,11,18,22 103:16 105:12,22, 23,24 106:2 112:24

**reporter** 4:21,24 117:21 126:1,23

**representative** 122:17

**representing** 47:18

**request** 4:2,11 11:9,13 48:22 109:14,17 116:16 119:21 124:12

**requested** 9:2,7 11:6,16,18 18:6 29:10,11 31:15,18, 24 32:12,14 33:4 38:24 39:25 40:12 48:24 119:11

**requesting** 11:7 33:2 72:19 125:8

**requests** 50:7 118:19 119:13

**require** 18:24 102:18

**required** 9:4 18:21 26:3,4 39:17 73:9 82:18 111:8 113:9

**reserving** 84:2

**residents** 57:7

**respect** 14:7 59:17 65:18 66:22 76:14,15 84:23 112:17 116:2

**responded** 73:23

**response** 50:6,7 72:22 74:3 78:24 97:25 98:20 99:21 118:19

**responses** 7:11 116:15,16 124:11, 12

**responsible** 48:17

**responsive** 74:2

**restate** 75:20,21

**restricting** 70:5 71:10

**result** 63:2 93:22

**resulting** 80:24

**retrieved** 94:11, 12

**return** 100:3

**returned** 30:14 89:16

**returning** 81:15

**review** 8:4 43:2,6, 11,18,20,23 44:14 45:19 53:10 73:22

**reviewed** 5:7,10 6:13,16 7:22,25 8:6,13 53:7 101:22

**rights** 113:6,9,16 114:9

**River** 5:2 56:21 57:10,14,17,19,22 58:2 85:9

**road** 34:23

**Robert** 54:13

**ROCKLAND** 126:1

**room** 102:20

**round** 88:8

**rule** 4:15 7:7,13 49:6,16 74:6,7 100:24 124:14

**rules** 72:12 73:9

**ruling** 55:14 56:4

**rush** 108:21,25

**S**

**safeguard** 25:8, 10

**safely** 42:3

**safety** 13:8 28:10, 11 32:19 56:11,12, 14 63:10,19,23 64:5 66:18 74:17 76:10 77:5,19 78:13 89:17 101:20 106:19 122:18

**Salit** 4:18 126:1, 23

**Salt** 60:16,18

**sat** 89:19

**save** 9:5 18:22

**saved** 9:2 39:3 40:2,10

**scene** 23:2,12 24:11,23 28:8,9,21 29:4,9,10 31:17 36:24 41:2 42:6,18 89:22 90:16 96:18 98:21 106:16 110:21 112:14 114:2 120:22

**school** 55:4,6

**search** 24:15,18, 19,21 25:2,5,16,17 26:2 27:10 29:12 41:10 47:16,19 89:15 91:5,6,19 93:18 94:17

**searched** 28:7 41:15 90:17

**seat** 21:13,14,15 34:9 35:19 40:24 90:3,4,8 91:2

**seated** 38:11

**seconds** 20:10, 11,14,18 34:16

**section** 69:6,10, 17 70:4,16 71:8 73:19 74:12 75:5, 6,24,25 106:3

**secured** 92:21 93:13

**security** 55:25

**seized** 93:19,21, 24 94:9,20 95:19 114:17,20,24

**self-contained** 35:14

**separate** 34:8 96:16

**separately** 5:16 24:3

**sergeant** 13:25 14:6 15:5,17 16:2, 14

**served** 13:25 14:7 15:5,16,25 16:6, 10,13 33:8,11,15, 18,21,23 43:19 44:8 116:14

**services** 7:4 57:6 78:15

**Session** 63:16

**set** 74:12 126:10, 18

**sheriff** 56:7 59:18, 21,23 60:2,3,13, 20,25 61:14 76:15 77:3,16 78:10

**Sheriff's** 56:8 66:4

**sheriffs** 61:15

**Sherrie** 8:23 12:14 13:11 14:14 15:18 16:3 18:19 19:4 20:2 22:11 26:16 27:22 28:14 29:2,14,23,24,25 30:21 36:25 41:10, 13 42:7,22 43:7,15 53:5 71:8,16 75:23 79:9 81:21 84:24 85:21 102:2 107:7 113:5 115:4,11,18 116:19 118:6, 119:21

**shorthand** 126:1, 23

**shortly** 17:2 20:4

**show** 7:14 34:7 49:19 70:12 71:4 74:23 101:13

**showed** 50:11,16

**showing** 48:25 50:4 94:2 116:5

**shown** 49:13

**side** 41:14 88:20 90:19 91:7

**sign** 104:16

**signature** 104:21

**signed** 15:17 101:4 104:20 105:2 106:14

**simply** 21:11 73:18 74:25 111:15 112:19

**single** 94:25

**singles** 91:23 92:15 94:22

**sir** 63:10

**sister** 98:5,17 99:8,23 100:16,17 106:7 107:8 109:10 113:24

**sister's** 94:15

**sit** 17:18 79:20

**situation** 102:15

**six-month** 11:12

**sixteen** 44:17,20, 25 45:9 52:4

**sixty-six** 96:14,25

**size** 68:11

**Sky** 55:7

**Slightly** 35:3,4

**social** 55:13,18,24 58:21 125:18

**sort** 60:21

**southbound** 85:9,10

**space** 119:6,22

**speak** 99:7,8

**speaking** 30:14, 21 107:7

**Special** 13:24

**specific** 49:19 59:3,5 60:7,8 63:11

**specifically** 23:9 43:5 44:17

**speed** 86:6,8,13

**spent** 64:20,22

**spoke** 29:17 102:13 107:3 113:19 119:9 120:5,21 125:12

**spoken** 51:9

**spoliation** 18:13

**ss** 126:1

**stamp** 33:19,22, 23

**stand** 122:21

**start** 20:14 120:13,14

**starts** 40:21

**state** 4:19 56:9 61:18 62:25 63:17, 20 65:12,15 66:7 69:6,10,18,21 71:9 74:11 75:24,25 76:16 77:3,17 78:11 100:12 126:1

**stated** 89:3

**statement** 113:11 114:2

**stating** 32:8

**station** 95:7 96:23

**status** 43:2

**stop** 10:17 20:6, 24 21:3 25:13 29:6 30:4 31:16 35:18 36:9,13 71:2 80:25 83:2 94:10

**stoppage** 24:15 84:24

**stopped** 29:2,14, 24 30:7,22 36:24 71:7,16 75:23 113:22

**stopping** 8:22 10:21 18:18 19:6

**storage** 11:23

**stored** 6:10 11:5, 23,25 14:18

**strenuously** 52:14

**stress** 55:21

**strike** 73:14,25

**studies** 58:21

**study** 58:10,17,18 59:11,14 63:13 64:7,16 66:21,22 68:25

**studying** 59:2,8

**stuff** 25:12 93:13

**Subscribed** 123:9

**subsequently** 12:15

**substance** 62:4, 7,15 63:5,6 65:21 70:9 71:15 76:7,18 79:5,12,16,17,23 80:4, 82:8 83:20 84:18 89:11 102:17 109:12

**substances** 68:9 69:22 70:6 71:11

**sued** 14:13

**superior** 101:23 102:4,9

**supposed** 19:16 46:13

**Sutton** 121:19,21

**switch** 21:18,20

**sworn** 4:18 123:9 126:11

**T**

**taking** 21:7

**talk** 5:20 112:9

**talking** 50:14,17 51:5 61:23 71:2 92:5

**tape** 8:13 28:23 37:12,15,19 38:4, 21 45:25 46:21 47:3

**Taryn** 83:3

**telephone** 16:15 52:23 106:19,23, 25 107:13 108:3 109:6 120:5

**telling** 23:16 47:15 82:17 112:6 117:23

**temporary** 70:7 71:12

**term** 66:10 69:23 76:16 83:5

**terminology** 66:10

**terms** 19:9 24:18 58:8 68:10,18

**test** 66:25

**testified** 42:20 48:5,6,8,15,16 51:12 52:17 70:14 78:9 80:6 96:2,5,9 97:25 106:22 113:19 117:5

**testify** 5:7 116:6

**testifying** 49:21

**testimony** 7:23 22:17,23 28:21 111:4 118:11 126:13

**tests** 68:18

**thing** 59:6

**things** 37:11 111:15 112:7,15, 18 118:2

**thirteen** 45:5,8

**Thomas** 54:14 103:8

**throwing** 17:8

**till** 56:10

**time** 9:13,18,19 10:4,11 11:8 13:10,18 14:6,16 19:4 21:22, 22:25 24:2 25:13 26:7, 10,13,15 27:7,24 28:2 30:5,10 31:18,20,24 32:11 35:20 36:11 40:25 42:11 45:19,24 51:17 52:6 59:20 60:12,22,24 61:17 62:25 64:9,19,22 65:10 68:20 71:7, 15 75:22 76:12,13 80:5 84:14 85:5,6 95:24 98:3 106:17 107:6 113:8,22 114:18 115:10,18 120:14 123:4

**Timothy** 4:23 123:1,7 126:1

**today** 5:7 7:23 15:9,12,13 49:9,24 50:9 54:2 82:25 83:12

**told** 12:18 47:20, 23 50:25 73:4 81:14 90:11,16 96:20 98:4,12,25 99:5 100:15 103:9 107:6,15 109:8 110:12,14 111:22 113:23 121:11,16

**top** 62:9,23 80:17

**total** 93:23 96:6, 13,25

**totality** 110:5

**tour** 19:14 120:9, 12

**tow** 24:23 91:4

**towed** 91:20

**town** 85:12

**traffic** 35:5,18 36:9,13 58:12,15 63:2 80:25 94:10

**training** 58:25 59:10 63:11,22 64:12,17 65:11,19, 23 66:8,13,23 67:8,9,21,22 68:17 69:2,5 74:10 88:24

**Tramadol** 91:16

**Tramadols** 91:14

**transcript** 53:5, 21 119:7,15,19,23 126:11

**transport** 115:22 117:10

**transported** 24:3 93:13,15 115:18 116:19 117:6,13 118:6,15,21,25

**transporting** 23:2,11

**travelling** 85:8,15

**trial** 84:3

**truck** 24:23 91:4

**true** 97:25 126:12

**turn** 7:16 20:13,22 34:16 45:3,5 89:4

**turned** 21:25 22:4,22 34:2 40:23 89:9

**turns** 9:9

**twelve** 96:14,25 99:14,17,18 100:11

**twenty** 60:10

**two-year** 54:21 58:9,16 59:13

**type** 82:13

**typed** 105:4,24

U

**U.S.** 93:23

**uh-huh** 99:19 100:9

**Ultram** 91:18

**understand** 12:8 15:22 20:16 22:17 28:12 60:6 75:19, 23 77:21 78:3 86:18 96:9 105:18 112:6 114:7

**understanding** 10:13 48:15 101:7 103:15

**understood** 10:4 24:2

**undertake** 18:16

**Unit** 13:25

**universe** 53:2

**unlabeled** 87:13

**unlawfully** 69:23 74:12

**unrelated** 122:16

**Utica** 63:16

**utilized** 105:16

V

**Valhalla** 116:23 121:4,13,22 122:7

**valid** 98:6,17 99:24 100:17 106:8 110:17 112:12 113:24 115:13

**vehicle** 8:14,15 26:12,14,21,22 27:12,14,19,20 28:10 29:6,18 30:15 34:22,25 35:2,18 36:3,4,25 37:2,5,9 38:5 39:2, 7 41:14,15,17,21 42:3,4 44:23 45:15 58:12,15 85:8,15, 17,18, 86:20 87:4 89:16,17, 90:19,20 91:2,3,4,5,6,20,22 93:16 94:17,21 96:19 98:3 102:22

**vehicles** 27:21 37:6

**verify** 19:20 47:2 48:13

**vicinity** 91:12

**video** 8:16,18,21, 25 9:2,5,8,9,12,13, 15,16,21 10:2,5, 14,25 11:9,13 12:9 13:6 18:17,22 19:5,10,11,21 20:22 34:2 38:7, 14,25 39:3,20 40:15,19,21 47:7, 20 86:4,5 125:10

**video/audio** 39:11 45:25 46:21 47:3

**view** 87:13,23 88:4, 91:14

**violation** 69:24

**visual** 19:12 36:15

**volition** 29:9

**voluntarily** 89:19

**volunteered** 90:2

**voucher** 114:17

**vouchered** 114:19

W

**waited** 31:2

**walked** 41:14 42:2

**wanted** 70:19 71:4 112:9 113:10, 13,14 117:25

**watching** 102:24

**weapons** 41:16 42:7,15 90:18

**wearing** 35:13,21, 24

**week** 17:3 60:8,10

**weekend** 53:11, 23

**weeks** 63:25 64:19,24,25 65:2

**Westchester** 7:4 13:7 17:14 32:18 56:12,14,17 57:8 63:9,18,22 64:4 66:17 77:4,18 78:12 114:13 115:5 116:19,22 122:18

**whatsoever** 18:16 113:2 115:4

**WHEREOF** 126:18

**White** 115:19,22 116:20,21 118:6, 22

**wide** 68:2

**William** 54:14

**windshield** 34:4, 5,18

**withdraw** 22:16

**word** 11:21 73:25 74:11

**words** 6:15 21:6, 21 39:8 43:21 85:7

**work** 9:12 20:8 22:21 56:16 59:17 76:14,21

**worked** 60:15 61:6 78:9

**working** 19:17, 21:22 22:6,7,13,18 34:12 60:7 61:14, 18 103:5 120:9,12

**writing** 119:13,24

**written** 51:10

**wrong** 76:20

**Y**

**years** 57:11,18 60:20 61:22 112:2, 8

**yellow** 87:16

**Yonkers** 12:15,21 13:4 85:10,14

**York** 4:19 5:3 56:9 61:18 62:25 63:17, 20 65:12,15,18 66:7 69:6,10,17,21 71:8 74:11 75:24, 25 76:16 77:3,16 78:11 116:23 121:13,22 122:7 126:1

**Yup** 107:19

**Z**

**zone** 85:16