# EXHIBIT H

COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
SHERRIE DEANDA,

Plaintiff,

-against- 13 CV 1203 (KMK)

TIMOTHY HICKS, ANGELA CAPORALE, ROBERT PAVONE and WILLIAM THOMAS IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES AS POLICE OFFICERS OF THE COUNTY OF WESTCHESTER,

Defendants.

-----------------------------------x

April 1, 2014
3:15 p.m.

EXAMINATION BEFORE TRIAL OF Defendant, WILLIAM THOMAS, held at the offices of Aronwald & Pykett, Esqs., 81 Main Street, White Plains, New York, pursuant to Order, before Erika Caren, a Notary Public of the State of New York.

* * *

SANDY SAUNDERS REPORTING
254 South Main Street, Suite 216
New City, New York 10956
(845) 634-7561

A P P E A R A N C E S

ARONWALD & PYKETT, ESQS.
Attorneys for Plaintiff
81 Main Street, Suite 450
White Plains, New York 10601

BY: WILLIAM ARONWALD, ESQ.

OFFICE OF THE WESTCHESTER COUNTY ATTORNEY
Attorneys for Defendants
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601

BY: TARYN A. CHAPMAN-LANGRIN, Sr. Assistant County Attorney

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the times of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before this court.

W I L L I A M   T H O M A S ,

stating his business address as 1 Saw Mill River Parkway, Hawthorne, New York 10532, having been duly sworn by the notary public, was examined and testified as follows:

EXAMINATION BY MR. ARONWALD:

Q. My name is William Aronwald. I'm the attorney for the plaintiff, Sherrie Deanda, in this action in which you are one of four named defendants. I'm going to try to be brief in terms of the scope of questions.

Let me just say some things preliminarily to you. If for any reason you don't understand my question, please let me know and I will rephrase it. If the question is one which you do not hear in its entirety, let me know and I will restate it loudly enough so you can hear it. If the question is confusing to you, just explain that to me and I'll try to restate it in a fashion to make it clearer.

Okay?

A. Yes.

Q. Are you familiar with the complaint that's been filed in this action?

Thomas

A. Yes.

Q. Showing you what was previously marked as Plaintiff's Exhibit 1, have you seen that document before?

A. Yes.

Q. And you've read it?

A. Yes.

Q. Did you also have occasion to see the answer that was filed on your behalf in this case, and that would be document marked as Plaintiff's Exhibit 2?

A. No. I don't believe so.

Q. You have no recollection of seeing that before today?

A. No.

Q. Have you reviewed any documents in preparation for your testimony here today?

A. Yes.

Q. And what documents did you review?

A. This third amended complaint.

Q. Anything else?

A. That's all, I believe.

Q. And other than your attorney, have you had occasion to discuss this case with anyone else?

A. No.

Q. Just to be specific and clear, you have not had any discussions about this case with Police Officer Hicks?

A. No.

Q. Or Police Officer Caporale?

A. No.

Q. Or Sergeant Pavone?

A. No.

Q. Would you just state for the record what your educational background is.

A. Just a high school education.

Q. And what high school was that?

A. Saunders Trade and Technical High School in Yonkers.

Q. When did you graduate from high school?

A. 1976.

Q. And upon graduating high school, would you state what your employment history is.

A. I went into the United States Air Force in 1978 until 1982. Then I joined the New York International Guard from 1982 to 1990 as full-time Federal employee. I then became a police officer in July of 1990.

Q. Is that with the Westchester County Department of Public Safety?

A. No. The Town of Ossining.

Q. And how long were you with the Town of Ossining Police Department?

A. Until January of 2011, when they merged with the Westchester County Police.

Q. While you were a member of Ossining Police Department, did you have any supervisory responsibilities?

A. Yes.

Q. And what were those?

A. Patrol sergeant.

Q. Are you a patrol sergeant now with the Westchester County Department of Public Safety?

A. Yes, I am.

Q. Is Officer Hicks one of the people that you supervise?

A. Back at that time, yes. Not anymore.

Q. When you say, at that time, you mean May 28, 2012?

A. Yes.

Q. Are you still assigned to the Patrol Division?

Thomas

A. Yes.

Q. But he's not part of the unit that you supervise, is that it?

A. That is correct.

Q. Were you on duty on May 28, 2012?

A. Yes.

Q. And what was your assignment on that date?

A. From 06:30 to 2:30 p.m., I was the desk officer assigned to that -- that day.

Q. Where was your duty station physically located?

A. It's a three-desk console in the headquarters building.

Q. As you walk in the front entrance to the headquarters building, where would your desk be?

A. When you come in the headquarters from the lobby, you come to a window. It's one window only. Behind that is a desk. To the right of it is two more. I was stationed in the middle desk.

Q. Were there any other desk officers on duty, do you remember, during that same period?

A. Yes.

Q. Do you remember who they were?

A. The tour supervisor was Lieutenant

Thomas Sullivan, tour commander.

Q. What was his first name?

A. Scott Sullivan.

Q. And he was working the same tour you were?

A. Yes.

Q. And there was you.

Who was the other one?

A. Sergeant Chris Cristiano.

Q. What was his title?

A. He was also a tour supervisor with me.

Q. You were also a tour supervisor?

A. Yes. Lieutenant Sullivan was a tour commander.

Q. In other words, if he was a tour commander, does that mean that he was basically the guy that was actually in charge?

A. Yes.

Q. You and Sergeant Cristiano were working under his supervision?

A. Yes.

Q. As tour supervisor, since you and sergeant Cristiano were both tour supervisors during that same tour of duty, was he a tour supervisor of the same unit or people as you were?

A. Yes.
Q. In other words, the three of you were working as desk officers --
A. No. I was assigned to the desk, but until roughly 9:30 they assist me because we have to put 30 people out on the road. From 7:00 to 8:30 in the morning, we're responsible for making sure all the posts are covered. There's 31 posts in the county.
Q. From 7:30 to 8:30, all three of you work together to get the 31 posts covered?
A. Yes.
Q. After 08:30, were the three of you still working together or you were the guy who was basically the desk officer?
A. I'm the desk officer. Sergeant Cristiano was the road officer, road sergeant.
Q. That would be from 08:30 until?
A. 2:30.
Q. 14:30?
A. 14:30.
Q. Lieutenant Sullivan, he was still the commander?
A. He's the tour commander of the whole tour.
Q. In other words, if somebody came in off

Thomas

the street, they would speak to you, not to the tour commander?

A. Unless he was still on the desk. It's his seat until he turns it over to me.

Q. On that date, do you recall what time he turned the desk over to you?

A. No.

Q. On that date, did he at some point turn the desk over to you?

A. Yes.

Q. Do you recall whether it was before or after noon, 12:00?

A. No.

Q. How did your duties or responsibilities as the desk officer or tour supervisor differ from those of Sergeant Cristiano, who was the road supervisor?

A. Sergeant Cristiano will handle any incident on the road that require supervision, and I remain in the building.

Q. On May 28, 2012, if in the ordinary course of procedure a patrol officer engaged in a stop and an arrest and called from the scene, would that call go to you as the desk officer or would it go to

Sergeant Cristiano as the road supervisor?

A. A call like that would go right into the communications of the building, which are civilian dispatchers.

Q. Let's assume that the patrol officer calls to speak to a supervisor.

A. Then it would be the road supervisor.

Q. Then it would go not to you, but Sergeant Cristiano?

A. Yes.

Q. On May 28, 2012, did you make any notes or keep any records concerning your activities as a desk officer?

A. No. All I did was make an entry that I'm on duty and assigned to the desk.

Q. If calls came in to you from the road, you would not make any notes of that?

A. No.

Q. Would the road supervisor make notes of any calls that came in from the patrol officers from the scene?

A. If he was involved, yes.

Q. If a patrol officer called to speak to a supervisor to advise that he had made a stop and was

Thomas

making an arrest for some crime, that would go to the road supervisor and the road supervisor would or would not make a note of that?

A. Yes, he would.

Q. Did you, on May 28, 2012, receive any phone calls from Police Officer Hicks concerning an arrest of Sherrie Deanda?

A. I don't recall.

Q. If Sergeant Cristiano took a bathroom break and a patrol officer called in from the road concerning an arrest he or she was about to make then would I be correct that you would take that call since Sergeant Cristiano was away from his desk?

A. Yes.

Q. If you were filling in for him because he was away from his desk for whatever the reason, you would then be acting as the road supervisor until he returned, correct?

A. No. I'm not on the road, I can't see what's going on out there.

Q. He can't see what's going on out there if he's with you. I'm talking about a patrol officer calls in from the road concerning an arrest that he

or she is making and asks to speak to a supervisor. You said that call would go to Sergeant Cristiano, as the road supervisor.

I'm asking, if Sergeant Cristiano was away from his desk or otherwise engaged and the call came in to speak to a supervisor, would you take that call.

A. As long as the lieutenant was off the desk, yes.

Q. In that event, would you make a note of the conversation that you had with the patrol officer?

A. No.

Q. And why would that be?

A. It's a recorded line.

Q. Do you know how long those tapes are preserved?

A. No. I do not.

Q. You said before that the road supervisor would make a note of the call that he received from the patrol officer.

A. Yes.

Q. But you wouldn't because you knew it was being recorded anyway?

A. That is correct.

Q. When you say, the calls are recorded, do you mean all calls that come into the desk are recorded?

A. Yes.

Q. Even calls from civilians, any calls?

A. Yes.

Q. Do you have any knowledge as to whether those calls are removed from the data base at any specific time?

A. I have no idea what the length is, no.

Q. Did you have any involvement in the arrest or processing of Sherrie Deanda on May 28, 2012?

A. I don't recall.

Q. Did there come a time that you became aware on May 28, 2012 that Officer Hicks had arrested Sherrie Deanda?

A. I don't recall.

Q. Do you recall whether on May 28, 2012 that there were two young children that were brought into the headquarters by Officer Caporale?

A. Yes.

Q. Did you have a conversation with Officer Caporale at that time as to why she was in custody

of the two children?

A. No.

Q. What, if anything, did she say to you?

A. Nothing.

Q. How did you become aware that she had brought two children into the headquarters?

A. Behind the desk officer there is a small briefing room, and next to that is a juvenile office. I was informed that she was in there with the children.

Q. Do you recall who it was that informed you of that?

A. No. I do not.

Q. As the desk officer, did you assign Officer Caporale to transport Sherrie Deanda to the White Plains City Court?

A. No.

Q. Do you know who did?

A. I'm not sure, but I would have to imagine it was Lieutenant Sullivan.

Q. Basically, if I understand you correctly, you had no involvement whatsoever in anything at all to do with Sherrie Deanda's arrest on May 28, 2012?

A. No. As the desk officer, I would process

the fingerprint paperwork.

Q. Did you do that on that date?

A. I don't recall.

Q. But you would have been the one who would have done it?

A. Yes.

Q. And you were on duty until 14:30, you said?

A. Yes.

Q. Do you recall who it was that replaced you at the end of your tour?

A. No. I do not.

Q. Did there come a time on May 28, 2012 when people came to the desk to take the two children?

A. No.

Q. That did not happen?

A. It could have happened, but I don't recall anybody coming to me.

Q. When somebody came in through the front entrance to the headquarters building, they would not have been able to get beyond the window and the desk,, correct, unless somebody admitted them?

A. That's correct.

Q. Do you have any recollection on May 28,

Thomas

2012 of several people coming to the headquarters in connection with the arrest of Sherrie Deanda?

A. No.

Q. Do you recall anybody coming to the desk by the name of Paula Fontenette?

A. No.

Q. Do you remember whether or not on that date a woman by the name of Monique Angela Sutton came to the headquarters building in connection with Sherrie Deanda?

A. No.

Q. On May 28, 2012, did anyone come to the headquarters building asking to see Officer Hicks?

A. I don't recall.

Q. Do you remember whether anyone came to the headquarters building on that date claiming to be the person who the oxycodone pills that were the subject of Sherrie Deanda's arrest belonged to?

A. No.

Q. Do you recall whether anyone came to the headquarters building on that date with a prescription bottle for those oxycodone pills?

A. No.

Q. When you say you have no recollection, are

Thomas

you saying that that did not happen or you just don't recall whether it happened?

MS. CHAPMAN-LANGRIN: Objection to form. He doesn't know whether it happened.

MR. ARONWALD: He said, I don't recall. I just want to make sure it's the same as no.

MS. CHAPMAN-LANGRIN: You didn't ask that so I'm objecting to form.

Q. When you say you don't recall, are you saying that it did not happen or you don't recall?

MS. CHAPMAN-LANGRIN: Note my objection.

Q. You can answer.

A. I don't recall.

Q. Is it possible that that did happen?

MS. CHAPMAN-LANGRIN: Note my objection.

Q. You can answer the question.

MS. CHAPMAN-LANGRIN: Well --

Q. You can answer the question.

A. It's possible, sure.

Q. I want to show you what has been marked as Plaintiff's Exhibit 4. This is part of defendants'

disclosures pursuant to Rule 26, paren, a close paren, which has been marked as Plaintiff's Exhibit 4.

Showing you this State of North Carolina driver's license of Monique Sutton, do you recall whether you've ever seen that driver's license before today?

A. No. I do not.

Q. There's some handwriting on it which says, released Payton, and then in parentheses, child in vehicle, close parentheses.

Do you recognize the handwriting?

A. No.

Q. It's not your handwriting?

A. No.

Q. Turning to the next page, which is a photocopy of a New York State driver's license for Paula M. Fontenette, do you recall whether you saw that driver's license on May 28, 2012?

A. No. I do not.

Q. Or at any time thereafter?

A. No.

Q. And the handwriting which says, released Jada, paren, child in vehicle, close paren, is that

your handwriting?
A. No.
Q. Do you recognize the handwriting?
A. No.
Q. Are you familiar with the handwriting of Lieutenant Sullivan?
A. No.
Q. Are you familiar with the handwriting of Sergeant Cristiano?
A. No.
Q. Are you familiar with the handwriting of Sergeant Pavone?
A. No.
Q. Or Officer Hicks?
A. No.
Q. Or Officer Caporale?
A. No.
MR. ARONWALD: Thank you. I have no further questions.
(Time noted: 3:45 p.m.)

A C K N O W L E D G E M E N T

I, WILLIAM THOMAS, hereby certify, I have read the transcript of my testimony taken under oath in my deposition of April 1, 2014; that the transcript is a true, complete and correct record of what was asked, answered and said during this deposition, and that the answers on the record as given by me are true and correct.

____________________________

WILLIAM THOMAS

Sworn and subscribed to before me

this _____ day of ____________ 2014.

_________________________

Notary Public

C E R T I F I C A T E

State of New York)

ss

County of New York)

I, ERIKA CAREN, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That WILLIAM THOMAS, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given in such proceeding.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

In witness, whereof, I have hereunto set my hand this 16th day of April, 2014.

Erika Caren

ERIKA CAREN

Errata Sheet

NAME OF CASE: SHERRIE DEANDA -against- TIMOTHY HICKS, ANGELA CAPORALE

DATE OF DEPOSITION: 04/01/2014

NAME OF WITNESS: WILLIAM THOMAS

Reason Codes:

1. To clarify the record.
2. To conform to the facts.
3. To correct transcription errors.

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

Page _____ Line ______ Reason ______

From ____________________ to ____________________

_______________________

**0**

**06:30** 8:9
**08:30** 10:13,18

**1**

**1** 4:3 5:4 22:7
**10532** 4:4
**12:00** 11:13
**14:30** 10:20,21 17:8
**1976** 6:18
**1978** 6:22
**1982** 6:22,23
**1990** 6:23,25

**2**

**2** 5:12
**2011** 7:7
**2012** 7:22 8:6 11:22 12:12 13:6 15:14,17,20 16:24 17:14 18:2,13 20:20
**2014** 22:7,19
**26** 20:2
**28** 7:22 8:6 11:22 12:12 13:6 15:14, 17,20 16:24 17:14, 25 18:13 20:20
**2:30** 8:9 10:19

**3**

**30** 10:7
**31** 10:9,11
**3:45** 21:21

**4**

**4** 19:25 20:4

**7**

**7:00** 10:7
**7:30** 10:10

**8**

**8:30** 10:7,10

**9**

**9:30** 10:6

**A**

**acting** 13:19
**action** 4:10,25
**activities** 12:13
**address** 4:3
**admitted** 17:23
**advise** 12:25
**Air** 6:21
**amended** 5:21
**Angela** 18:9
**answers** 22:11
**anymore** 7:20
**April** 22:7
**Aronwald** 4:7,8 19:6 21:19
**arrest** 11:24 13:2, 8,12,25 15:13 16:24 18:3,19
**arrested** 15:18
**asks** 14:2
**assign** 16:15
**assigned** 7:24 8:10 10:5 12:16
**assignment** 8:8
**assist** 10:6
**assume** 12:6
**attorney** 4:9 5:24
**aware** 15:17 16:6

**B**

**Back** 7:20
**background** 6:12
**base** 15:10
**basically** 9:16 10:15 16:22
**bathroom** 13:10
**behalf** 5:10
**belonged** 18:19
**bottle** 18:23
**break** 13:11
**briefing** 16:9
**brought** 15:21 16:7
**building** 8:14,16 11:21 12:4 17:21 18:10,14,17,22
**business** 4:3

**C**

**call** 11:24 12:3 13:14 14:3,6,8,21
**called** 12:24 13:11
**calls** 12:6,17,21 13:7,25 15:3,4,7, 10
**Caporale** 6:7 15:22,25 16:16 21:17
**Carolina** 20:5
**case** 5:10,25 6:4
**certify** 22:5
**CHAPMAN-LANGRIN** 19:4,9, 13,18,21
**charge** 9:17
**child** 20:11,25
**children** 15:21 16:2,7,11 17:15
**Chris** 9:9
**City** 16:17
**civilian** 12:4
**civilians** 15:7
**claiming** 18:17
**clear** 6:3
**clearer** 4:21
**close** 20:2,12,25
**commander** 9:2, 14,16 10:23,24 11:3
**communications** 12:4
**complaint** 4:24 5:21
**complete** 22:8
**confusing** 4:19
**connection** 18:3, 10
**console** 8:13
**conversation** 14:12 15:24
**correct** 8:5 13:13, 20 15:2 17:23,24 22:9,12
**correctly** 16:22
**county** 7:2,8,16 10:9
**Court** 16:17
**covered** 10:9,11
**crime** 13:2
**Cristiano** 9:9,19, 23 10:16 11:17,19 12:2, 13:10,14 14:3,5 21:10
**custody** 15:25

**D**

**data** 15:10
**date** 8:8 11:6,9 17:3 18:9,17,22
**day** 8:10 22:19
**Deanda** 4:9 13:8 15:14,18 16:16 18:3,11
**Deanda's** 16:24 18:19
**defendants** 4:11
**defendants'** 19:25
**Department** 7:3, 6,10,16
**deposition** 22:7, 10
**desk** 8:9,16,19,20, 21 10:4,5,15,16 11:4,7,10,16,25 12:14,16 13:15,18 14:6,10 15:4 16:8, 15,25 17:15,23 18:5
**differ** 11:16
**disclosures** 20:2
**discuss** 5:25
**discussions** 6:4
**dispatchers** 12:5
**Division** 7:25
**document** 5:4,11
**documents** 5:17, 20
**driver's** 20:6,7, 18,20
**duly** 4:5
**duties** 11:15
**duty** 8:6,11,22 9:24 12:16 17:8

**E**

**education** 6:13
**educational** 6:12
**employee** 6:24
**employment** 6:20
**end** 17:12
**engaged** 11:23 14:6
**entirety** 4:17
**entrance** 8:15 17:21

entry 12:15
event 14:11
EXAMINATION 4:7
examined 4:5
Exhibit 5:4,12 19:25 20:3
explain 4:19

F

familiar 4:24 21:6, 9,12
fashion 4:20
Federal 6:24
filed 4:25 5:10
filling 13:17
fingerprint 17:2
Fontenette 18:6 20:19
Force 6:21
form 19:5,10
front 8:15 17:20
full-time 6:23

G

graduate 6:17
graduating 6:19
Guard 6:23
guy 9:17 10:14

H

handle 11:19
handwriting 20:10,13,15,24 21:2,4,6,9,12
happen 17:17 19:2,12,17
happened 17:18 19:3,5
Hawthorne 4:4
headquarters 8:14,16,17 15:22 16:7 17:21 18:2, 10,14,17,22
hear 4:16,18
Hicks 6:5 7:18 13:7 15:17 18:14 21:15
high 6:13,14,15, 17,19
history 6:20

I

idea 15:12
imagine 16:20
incident 11:20
informed 16:10, 12
International 6:23
involved 12:23
involvement 15:13 16:23

J

Jada 20:25
January 7:7
joined 6:22
July 6:25
juvenile 16:9

K

knew 14:24
knowledge 15:9

L

length 15:12
license 20:6,7,18, 20
lieutenant 8:25 9:13 10:22 14:9 16:21 21:7
lobby 8:18
located 8:12
long 7:5 14:9,17
loudly 4:18

M

made 12:25
make 4:20 12:12, 15,18,20 13:4,12 14:11,21 19:7
making 10:8 14:2
marked 5:3,11 19:24 20:3
member 7:9
merged 7:7
middle 8:20
Mill 4:3
Monique 18:9 20:6
morning 10:8

N

named 4:10
noon 11:13
North 20:5
notary 4:5 22:23
note 13:4 14:11, 21 19:13,18
noted 21:21
notes 12:12,18,20

O

oath 22:7
objecting 19:10
objection 19:4, 14,19
occasion 5:9,25
office 16:10
officer 6:5,7,24 7:18 8:10 10:15, 16,17 11:16,23,25 12:6,14,24 13:7, 11,24 14:13,22 15:17,22,24 16:8, 15,16,25 18:14 21:15,17
officers 8:21 10:4 12:21
ordinary 11:22
Ossining 7:4,6,9
oxycodone 18:18,23

P

p.m. 8:9 21:21
paperwork 17:2
paren 20:2,3,25
parentheses 20:11,12
Parkway 4:4
part 8:3 19:25
patrol 7:14,15,24 11:23 12:6,21,24 13:11,24 14:12,22
Paula 18:6 20:19
Pavone 6:9 21:13
Payton 20:11
people 7:18 9:25 10:7 17:15 18:2
period 8:22
person 18:18
phone 13:7
photocopy 20:18
physically 8:11
pills 18:18,23
Plains 16:17
plaintiff 4:9
Plaintiff's 5:4,11 19:25 20:3
point 11:9
police 6:4,7,24 7:6,8,9 13:7
posts 10:9,11
preliminarily 4:13
preparation 5:18
prescription 18:23
preserved 14:18
previously 5:3
procedure 11:23
process 16:25
processing 15:14
public 4:5 7:3,16 22:23
pursuant 20:2
put 10:6

Q

question 4:15,16, 18 19:20,22
questions 4:12 21:20

R

read 5:7 22:6
reason 4:14 13:18
recall 11:6,12 13:9 15:15,19,20 16:12 17:4,11,18 18:5,15,21 19:3,7, 11,12,16 20:6,19
receive 13:6
received 14:21
recognize 20:13 21:4
recollection 5:14 18:25
record 6:11 22:9, 11
recorded 14:16, 25 15:3,5
records 12:13
released 20:11,24
remain 11:21

**remember** 8:22, 24 18:8,16

**removed** 15:10

**rephrase** 4:15

**replaced** 17:11

**require** 11:20

**responsibilities** 7:11 11:15

**responsible** 10:8

**restate** 4:17,20

**returned** 13:20

**review** 5:20

**reviewed** 5:17

**River** 4:4

**road** 10:7, 11:17, 20 12:2,8,17,20 13:3,11,19,21,25 14:4,20

**room** 16:9

**roughly** 10:6

**Rule** 20:2

**S**

**Safety** 7:3,16

**Saunders** 6:15

**scene** 11:24 12:22

**school** 6:13,14, 15,17,19

**scope** 4:12

**Scott** 9:4

**seat** 11:5

**sergeant** 6:9 7:14,15 9:9,19,22 10:16, 11:17,19 12:2,9 13:10,14 14:3,5 21:10,13

**Sherrie** 4:9 13:8 15:14,18 16:16,24 18:3,11,19

**show** 19:24

**Showing** 5:3 20:5

**small** 16:8

**speak** 11:2 12:7, 24 14:2,7

**specific** 6:3 15:11

**state** 6:11,20 20:5, 18

**States** 6:21

**stating** 4:3

**station** 8:11

**stationed** 8:20

**stop** 11:23 12:25

**street** 11:2

**subject** 18:19

**subscribed** 22:18

**Sullivan** 9:2,4,13 10:22 16:21 21:7

**supervise** 7:19 8:4

**supervision** 11:20

**supervisor** 8:25 9:11,12,22,24 11:16,18 12:2,7,8, 20,25 13:3,19 14:2,4,7,20

**supervisors** 9:23

**supervisory** 7:10

**Sutton** 18:9 20:6

**sworn** 4:5 22:18

**T**

**talking** 13:24

**tapes** 14:17

**Technical** 6:15

**terms** 4:11

**testified** 4:6

**testimony** 5:18 22:6

**things** 4:13

**Thomas** 21:1 22:5,15

**three-desk** 8:13

**time** 7:20,21 11:6 15:11,16,25 17:14 20:22 21:21

**title** 9:10

**today** 5:15,18 20:8

**tour** 8:25 9:2,5,11, 12,13,15,22,23, 10:24 11:2,16 17:12

**Town** 7:4,5

**Trade** 6:15

**transcript** 22:6,8

**transport** 16:16

**true** 22:8,11

**turn** 11:9

**turned** 11:7

**Turning** 20:17

**turns** 11:5

**U**

**understand** 4:14 16:22

**unit** 8:3 9:25

**United** 6:21

**V**

**vehicle** 20:12,25

**W**

**walk** 8:15

**Westchester** 7:2, 8,16

**whatsoever** 16:23

**White** 16:17

**William** 4:8 22:5, 15

**window** 8:18 17:22

**woman** 18:9

**words** 9:15 10:3, 25

**work** 10:10

**working** 9:5,19 10:4,14

**Y**

**Yonkers** 6:16

**York** 4:4 6:22 20:18

**young** 15:21