UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

SHERRIE DEANDA,

      Plaintiff.


   -against-         Case No.: 13-cv-1203
(KMK)


TIMOTHY HICKS, ANGELA CAPORALE,
ROBERT PAVONE, AND WILLIAM THOMAS
IN THEIR OFFICIAL AND INDIVIDUAL
CAPACITIES AS POLICE OFFICERS OF THE
COUNTY OF WESTCHESTER,

      Defendants.
-------------------------------------------------------------------x




## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT




        WILLIAM I. ARONWALD
        ARONWALD & PYKETT
        81 Main Street, Suite 450
        White Plains, New York 10601
        (914) 946-6565

# Table of Contents

Preliminary Statement...................................................................................................1

Statement of Facts.......................................................................................................1

Standard Applicable to Summary Judgment Motions...................................................2

## Argument

Defendants are not entitled to qualified immunity concerning the arrest, seizure and detention of Plaintiff on May 28, 2012.................................................................................6

Defendant Hicks' arrest of plaintiff was not based upon probable cause and the seizure of Plaintiffs person was unlawful.........................................................................................7

The Seizure of the pill bottle was not Lawful under the "Plain View Doctrine"...........................12

At the time of her arrest Plaintiff was in lawful possession of the pills and therefore Officer Hicks did not have probable cause to arrest her.................................................................14
    A. Public Health Law § 3305.............................................................................14
    B. Plaintiff was acting as Fontanette's agent...................................................15
    C. Temporary Incidental Possession................................................................16

Plaintiff satisfies all the elements necessary to substantiate her malicious prosecution claims.....................................................................................................................17

Defendants are not entitled to summary Judgement dismissing Plaintiff's abuse of process claim..........................................................................................................21

Defendants withheld exculpatory information from the District Attorney.....................21

Plaintiff has established a claim against the county Defendants for punitive Damages..............23

Conclusion..................................................................................................................24

# Table of Contents

Preliminary Statement................................................................................................1

Statement of Facts...................................................................................................1

Standard Applicable to Summary Judgment Motions................................................2

## Argument

Defendants are not entitled to qualified immunity concerning the arrest, seizure and
detention of Plaintiff on May 28, 2012..................................................................6

Defendant Hicks' arrest of plaintiff was not based upon probable cause and the seizure of
Plaintiffs person was unlawful................................................................................7

The Seizure of the pill bottle was not Lawful under the "Plain View Doctrine"..........................12

At the time of her arrest Plaintiff was in lawful possession of the pills and therefore
Officer Hicks did not have probable cause to arrest her...........................................14
  A. Public Health Law § 3305................................................................14
  B. Plaintiff was acting as Fontanette's agent.............................................15
  C. Temporary Incidental Possession.......................................................16

Plaintiff satisfies all the elements necessary to substantiate her malicious prosecution
claims....................................................................................................................18

Defendants are not entitled to summary Judgement dismissing Plaintiff's abuse of
process claim.........................................................................................................21

Defendants withheld exculpatory information from the District Attorney....................21

Plaintiff has established a claim against the county Defendants for punitive Damages.............23

Conclusion.............................................................................................................24

## PRELIMINARY STATEMENT

Plaintiff Sherrie Deanda, by her attorney, William I. Aronwald, submits this Memorandum of Law in opposition to Defendant Timothy Hicks' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").

Based upon the pre-trial discovery, notably the depositions of the parties and non-party witness Paula Fontanette, Plaintiff has no objection to summary judgment in favor of Defendants Angela Caporale, Robert Pavone and William Thomas.

Plaintiff is seeking damages for violation of her constitutional rights pursuant to 42 U.S.C. Sections 1983 and 1985, the Fourth , Fifth, Sixth and Fourteenth Amendments to the Constitution and New York State common law, alleging an unreasonable search and seizure of her person and property, malicious prosecution, abuse of process, that defendants withheld exculpatory information from the Westchester County District Attorney, conspired against Plaintiff, and that defendants published defamatory and false statements against her.  In addition, Plaintiff also asserts a claim for false arrest.

## STATEMENT OF FACTS

For a statement of material facts, Plaintiff respectfully refers this Honorable Court to Plaintiff's Rule 56.1 Statement.

Briefly stated, however, this action is the result of Plaintiff's arrest on May 28, 2012 by Defendant Officer Hicks ("Hicks") on the charge of Criminal Possession of a Controlled Substance (Oxycodone) in the Fourth  Degree, a Class C felony punishable by up to fifteen

years in prison.[1]

Plaintiff's claims are rooted in her assertion that, although she was in possession of Oxycodone for which she did not have a prescription, New York Public Health Law § 3305 provides that the law prohibiting the unlawful possession of controlled substances including, for example, Oxycodone, does not apply to the temporary incidental possession by agents or persons lawfully entitled to possession of such substance. Here, at the time of the arrest, Officer Hicks was advised by both Plaintiff and her sister, Paula Fontanette, that the pills belonged to Fontanette, that she had a valid prescription for the pills, that she had mistakenly left them at Plaintiff's home the night before and that Plaintiff was driving to Manhattan to return them to her. Thus, Plaintiff's possession was temporary and incidental and, at the time, she was acting as her sister's agent returning the Oxycodone to her.[2]

## STANDARD APPLICABLE TO SUMMARY JUDGMENT MOTIONS

Preliminarily, "[s]ummary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is  no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P.56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)." *Marvel Characters, Inc. v. Simon,*

---

[1] Plaintiff had been puled over by Hicks for speeding in the southbound lanes of the Bronx River Parkway.

[2] Plaintiff's Rule 56.1 Statement includes citations to the admissible evidence for each stated fact.

2

310 F.3d 280, 285-86 (2d Cir.2002).

A dispute about a material fact is considered "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509 (1986). Thus, "the issue of material fact required by Rule 56 (c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592 (1968). In short, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter ut to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2511.

Although the party seeking summary judgment has the burden of demonstrating the non-existence of any genuine issue of material fact, in determining whether a genuine issue of material fact exists, the court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-moving party. *Id.* "The trial court must bear in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2313-14 (1986).

In view of judicially recognized standards applicable to summary judgment motions,

the instant motion must be denied because there are a number of genuine material issues of fact in dispute.

First, although Hicks admits that, during his traffic stop of Plaintiff, she "voluntarily advised" him that the oxycodone pills belonged to her sister, and that her sister has a valid prescription for the pills, he denies that she also told him that her sister had left the pills at her home the night before and that she was on her way to return them to her. (Exhibit E, page 89, lines 6-12; 97, line 24- page 100, line 21; Exhibit N, paragraphs 14-15, annexed to the Chapman-Langrin Declaration)  In direct contradiction, Plaintiff claims  she told Hicks that her sister, Paula Fontanette, had left the pills at her home the night before and she was on her way tot return them to her. (Exhibit A, page 24, line 18 to page 26, line 1; Exhibit D, page 22, line 3-9, annexed to the Chapman-Langrin Declaration.  Clearly, this is a genuine issue of material fact since the fact that Plaintiff told Hicks the pills belonged to her sister, that she had a prescription for them and that she had left them at Plaintiff's house the night before and she was on her way to the City to return them to her goes to her  claim that, based upon Public Health Law, § 3305, her  possession of the oxycodone was not unlawful.[3]

Plaintiff's claims are rooted in her assertion that, although she was in possession of Oxycodone for which she did not have a prescription, New York Public Health Law § 3305 provides that the law prohibiting the unlawful possession of controlled substances including,

---

[3] Fontanette called Plaintiff the night before to tell her she had left her pills there and asked he to bring them to her.  (Exhibit I, page 52, lines 5-18, annexed to the Chapman-Langrin Declaration).

4

for example, Oxycodone, does not apply to the temporary incidental possession by agents or persons lawfully entitled to possession of such substance.  At the time of the arrest, Officer Hicks was advised by both Plaintiff and her sister, Paula Fontanette, that the pills belonged to Fontanette, that she had a valid prescription for the pills, that she had mistakenly left them at Plaintiff's home the night before and that Plaintiff was driving to Manhattan to return them to her.  In fact, her sister called her the night before to tell her she had left her pills at Plaintiff's home and was in pain. (Exhibit D, page 27, lines 4-15, annexed to the Chapman-Langrin Declaration)

If Plaintiff's version of her conversation with Hicks is credited by the jury, he was aware that Plaintiff's possession was temporary and incidental, that she was acting as her sister's agent in returning them to her and, therefore, her possession was not unlawful.

Second, there is a marked conflict between the testimony of Hicks and Plaintiff's sister, Paula Fontanette ("Fontanette")  While at the arrest scene, Hicks had a telephone conversation with Fontanette.  He claims that the sole purpose for speaking to her was to ascertain  who was going to pick up the two children in Plaintiff's car.  He claims he does not recall any conversation with her regarding the oxycodone pills. More important, he also testified whatever Fontanette  might have said would have been irrelevant  because since Plaintiff did not have a prescription for the pills, "she was being arrested no matter what". ( Exhibits N, E, page 107, lines 13-19,  page 109, line 6 to page 112, line 16, annexed to the Chapman-Langrin Declaration).

In direct contradiction of Hicks, Fontanette testified she told him she had a valid prescription for the pills and that she would bring the prescription bottle to wherever she needed to go but Hicks said he wasn't talking to her about the pills and only wanted to know who was coming to pick up the kids.  When she repeated she had a prescription for the pills and would bring the prescription labeled bottle to wherever she had to go, Hicks hung up. (Exhibit I, page 27, lines 3-24 ,annexed to the Chapman-Langrin Declaration)

These substantial and significant conflicts between Hicks and Plaintiff and between Hicks and Fontanette constitute genuine issues of material fact, regarding the applicability of Public Health Law § 3305, and the issue concerning whether there was probable cause for Plaintiff's arrest,  requiring denial of Defendants' motion for summary judgment.

## ARGUMENT

### DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY CONCERNING THE ARREST, SEIZURE AND DETENTION OF PLAINTIFF ON MAY 28, 2012

The Second Circuit has held that " A defendant may establish a right to qualified immunity by showing that 'it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution;' or that 'it was not clear at the time of the acts at issue that an exception did not permit those acts;' or that 'it was objectively reasonable for [the officer] to believe that his acts did not violate [plaintiff's] rights." (Internal citations omitted) *Krause v. Bennett*, 887 F.2d 352, 368 (2d Cir. 1989)

In this case, Hicks admits that he was familiar with Public Health Law, § 3305 and its relation to Penal Law, § 220.00. Based upon the testimony of Plaintiff and Fontanette, they provided him with information sufficient to satisfy § 3305 which, when applied to this case, makes Plaintiff's possession of the pills not unlawful. Hicks chose to ignore what he was told and, instead, arrested Plaintiff. His conduct, in deciding not to permit Fontanette to come to the scene or to Headquarters with her prescription labeled bottle was not objectively reasonable.

Further, based upon their information and his failure to investigate the same, for the reasons hereinafter set forth, he did not have probable cause for Plaintiff's arrest. Thus, under the circumstances of this case, his conduct was not objectively reasonable under the totality of the circumstances and, thus, Hicks is not entitled to qualified immunity.

## DEFENDANT HICKS' ARREST OF PLAINTIFF WAS NOT BASED UPON PROBABLE CAUSE AND THE SEIZURE OF PLAINTIFF'S PERSON WAS UNLAWFUL

Certainly, Officer Hicks was justified in pulling Plaintiff over once he observed her speeding on the Bronx River Parkway. However, he did not have probable cause to arrest her for Unlawful Possession of a Controlled Substance or, for that matter, any criminal offense.

Hicks claims he had probable cause to arrest Plaintiff, arguing that her possession of the Oxycodone without a prescription constituted probable cause and that whatever other circumstances existed were irrelevant.. (Exhibit E, page 110, lines 4-7, annexed to the

Chapman-Langrin Declaration).

The law is otherwise. Thus, "[t]he existence of probable cause must be determined by reference to the totality of the circumstances." *Manganiello v. City of N.Y.*, 612 F.3d, 149, 161 (2d Cir. 2010) Ignoring this well established legal principle, Hicks testified that "regardless of the totality of the circumstances, it was irrelevant because [Plaintiff] didn't have a prescription . . . she was under arrest no matter what". (Exhibit E, page 110, lines 4-7, annexed to the Chapman-Langrin Declaration) However, reference to the totality of the circumstances discredits Hicks' claim that he had probable cause to arrest Plaintiff. Thus, "[p]robable cause to arrest exists when the officer has knowledge of, ... , facts and circumstances that are sufficient to warrant a person of *reasonable caution* in the belief that an offense has been or is being committed by the person to be arrested." *Id.* (emphasis added). However, an officer's "awareness of the facts supporting a defense can eliminate probable cause" *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir 2003). Thus, where- as in this case- " 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause' *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S. 2d 453, 455, 455 N.E.2d 1248 (1983)" *Manganiello,* 612 F.2d at 161.

Defendants rely on *Panetta v. Crowley*, 460 F.3d 388,396 (2d Cir., 2006) for its' holding that an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause, but conveniently omits its recognition that "an officer may not disregard plainly exculpatory evidence" in making a probable cause

determination. 460 F.3d at 395. Yet, this is precisely what Hicks did in this case.

Once informed by Plaintiff and Fontanette that the pills belonged to Fontanette, that she had a valid prescription for the pills, that she had mistakenly left them at Plaintiff's home the night before, and that Plaintiff was on her way to Fontanette's home to return them to her, Hicks was aware of facts supporting a defense, to wit, the temporary and incidental possession by agents or persons lawfully entitled to possession of such substance is not unlawful. Further, Fontanette offered to bring her prescription labeled bottle to wherever she had to go to prove that she had a prescription for the pills which were her's. In response, Hicks simply hung up, terminating the conversation.

Analysis of Hick's actions is informed by his testimony that he was aware of the interaction and relationship between Penal Law § 220.00 and Public Health Law § 3305. (Exhibit E, page 69, line 20 to 70, line 2, 71, line 6-17, annexed to the Chapman-Langrin Declaration). Yet, he failed to make further inquiry to verify the information provided by Plaintiff and Fontanette at the scene of the arrest which, under the circumstances, was unreasonable. That, coupled with the fact that under §3305, Plaintiff's possession was not unlawful, there was no probable cause for Sherrie Deanda's arrest.

Interestingly, Defendants' counsel argues that once Hicks observed the unlabeled pill bottle containing what he identified as oxycodone, he was justified in making inquiry of the plaintiff to ascertain whether she was in lawful possession of the pills. (Defendants' Memorandum of Law, page 5). However, after conducting the inquiry, he simply ignored

and/or rejected the information that both Plaintiff and her sister, Fontanette, provided which, if true, meant that Plaintiff was in lawful possession of the pills.   In essence, counsel is arguing that the inquiry was properly limited to ascertaining whether Plaintiff had a prescription for the pills. However, given the plain language of §3305, the focus should not have been so narrowly defined.

Unfortunatley, counsel misstates the facts in asserting that the only material facts available to Hicks at the time of the arrest were that Plaintiff was in possession of the oxycodone, in an unlabeled pill bottle, for which she did not have a prescription. (Defendants' Memorandum of Law, page 7)   To the contrary, he was also provided with the material facts provided by Plaintiff and Fontanette but ignored and/or rejected those facts without giving any thought to conducting a further inquiry to properly consider the totality of the circumstances and the easily verifiable exculpatory information provided by Plaintiff and her sister.

Counsel further engages in the spurious claim that "because plaintiff did not have a prescription for the pills, either her prescription, or her sister's, the lawful possession of the pills could not be immediatley ascertained by Officer Hicks at the time of the arrest, and consequently, Officer Hicks had . . . probable cause to . . . arrest plaintiff." (Defendants' Memorandum of Law, page 12, 13). First, counsel ignores the fact that Fontanette offered to bring her prescription labeled bottle to wherever she had to go to confirm the information she gave to Hicks. Second, counsel overlooks Hicks' testimony that "regardless of the totality

of the circumstances, it was irrelevant because [Plaintiff] didn't have a prescription . . . she was under arrest no matter what". (Exhibit E, page 110, lines 4-7, annexed to the Chapman-Langrin Declaration).

Equally, frivolous and incorrect, is counsel's assertion that the information Fontanette provided in her sworn written statement (Exhibit L, annexed to the Chapman-Langrin Declaration) two weeks after Plaintiff's arrest, in which she stated that the pills belonged to her and that she had a valid prescription for the pills, was "information not available to Hicks at the time of the arrest." (Defendants' Memorandum of Law, page 12) Of course it was. Indeed, Fontanette has (as noted above) testified that she gave Hicks that same information at the scene of the arrest.

To be sure, as a reasonable alternative to arresting Plaintiff and holding her in custody for approximately twelve hours, Hicks could have asked her to accompany him to Headquarters in a non-custodial capacity pending Fontanette's arrival with the prescription labeled bottle and proper identification so that he could verify that the information she gave him was true. Based upon his deposition testimony, he didn't care and, according to him, the totality of the circumstances did not matter as he was going to arrest Plaintiff "no matter what."

In direct contrast to Hicks' refusal to consider the totality of the circumstances, once the District Attorney was apprised of those circumstances establishing Plaintiff's temporary and incidental possession of the Oxycodone as her sister's agent, he abandoned the

prosecution and withdrew the charges resulting in a favorable termination of the proceedings. To be clear, the information Fontanette gave in her sworn statement is the same information she gave Hicks at the scene of the arrest except that she also produced at the time she gave her statement the labeled prescription bottle which she offered to do during her telephone discussion with Hicks.

## THE SEIZURE OF THE PILL BOTTLE WAS NOT LAWFUL UNDER THE "PLAIN VIEW DOCTRINE"

Hicks claims that when he approached Plaintiff's vehicle and asked for her license and registration, she opened her purse and he then observed a pill bottle, amber in color, and he was able to observe that the bottle was unlabeled and that it contained blue pills. He claims that although the bottle was round, and was laying in her purse, he was able to see through it. (Exhibit E, page 87, line 9 to page 88, line 22, annexed to the Chapman-Langrin Declaration). He also, claims that he immediatley identified the pills as Oxycodone, and then asked "may I see the pills" and Plaintiff "just handed them over." (Exhibit E, page 88, line 23 to page 89, line 5, annexed to the Chapman-Langrin Declaration).

Plaintiff challenges Hick's assertion that he was able to see through the amber colored pill bottle and see that the pills were blue. This too presents a genuine issue as to a material fact which, again, goes to the issue of probable cause. Contrary to Hick's account that he asked "may I see the pills", he directed Plaintiff to give him the bottle and she complied. (Exhibit D, page 19, line 20-page 20, line 4, annexed to the Chapman-Langrin Declaration).

For the pills to be considered "in plain view", the incriminating nature of the pills must

have been immediatley apparent to Officer Hicks. Reasonable suspicion is not enough. *Arizona v. Hicks*, 480 U.S. 321, 326-327 (1987). "The 'immediatley apparent' requirement is a vital constraint on the plain view exception to the Fourth Amendment requirement" *United States v. Garcia*, 496 F.3d 495, 510 (6th Cir. 2007). Further, "The incriminating nature of an item is 'immediatley apparent' if the officers have 'probable cause' to believe that the item is either evidence of a crime or contraband." *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995). Accordingly, applying these principles to the facts of this case, Defendants' contention that once the amber colored unlabeled pill bottle was in plain view, Hicks was justified in directing Plaintiff give it to him and proceed to search it to ascertain its contents is simply wrong. Indeed, "[a]ny act on the part of [Hicks} beyond merely viewing what is already exposed would clearly constitute [an impermissible] a search" *United States v. Silva*, 714 F. Supp.693,696 (S.D.N.Y. 1989) [4]

On the facts in the instant case, based upon these authorities, the plain view doctrine does not apply.

## AT THE TIME OF HER ARREST PLAINTIFF WAS IN LAWFUL POSSESSION

---

[4] Even if Hicks was able to discern that the pills inside the bottle were blue in color, the result would be the same. The Court can take judicial notice that oxycodone is not the only blue colored pill on the market and, also, that oxycodone pills can be either grey, pink, light blue or a darker blue.

## OF THE PILLS AND THEREFORE OFFICER HICKS DID NOT HAVE PROBABLE CAUSE TO ARREST HER

**A.**     **Public Health Law § 3305**

Since we have already discussed the issue of  probable cause, we now focus on Defendants' misguided attempt to override the clear and explicit language of Public Health Law § 3305.

As a preliminary matter,  the issue is not whether on May 28, 2012, Plaintiff was in possession of the oxycodone pills.  She was!  Nor, for that matter, is there any dispute that she did not have a prescription for the pills.  She did not!.

The issue is whether her possession of the pills was unlawful and in violation of New York Penal Lw § 220.09, Criminal Possession of a Controlled Substance in the Fourth Degree, a Class C felony, punishable by up to fifteen years in prison.

Penal Law § 220.00 2 states that " 'unlawfully' means in violation of Article thirty-three of the public health law.  In turn, Public Health Law § 3305 provides that the provisions of Article 33, restricting the possession and control of controlled substances does not apply *inter alia* "(c) to temporary incidental possession by employees or agents of persons lawfully entitled to possession, or by persons whose possession is for the purpose of aiding public officers in performing their official duties."   § 3302  33 defines "ultimate user" as " a person who lawfully obtains and possesses a controlled substance for his own use. . . ." §3302 30 states "'Prescribe' means a direction or authorization, by prescription, permitting an ultimate user lawfully to obtain controlled substances from any person authorized by law to dispense

such substances." There is no dispute that Paula Fontanette lawfully obtained and possessed the oxycodone pills at issue in this case. In other words, she was an "ultimate user" "lawfully entitled to possession" of the pills.

Counsel's arguments concerning Public Health Law § 3345 and 3387 have nothing at all to do with § 3305's pronouncement that temporary incidental possession by employees or agents of persons lawfully entitled to possession is not unlawful.

**B.**   **Plaintiff was acting as Fontanette's agent**

Seeking to avoid clear import of §3305, counsel argues that Plaintiff was not Fontanette's agent within the meaning of §3305, relying on § 3302(3) which provides that "'Agent' means an authorized person who acts on behalf of or at the direction of a manufacturer, distributor, or dispenser." Thus, by counsel's unduly narrow interpretation of § 3305, "only the temporary incidental possession by employees or agents of [a manufacturer, distributor or dispenser] is not unlawful." Significantly, Defendants offer no case authority supporting this argument. Indeed, if the legislative intent in enacting § 3305, was to limit "persons lawfully entitled to possession" to manufacturers, distributors or dispensers, it would have said so. Counsel's argument to the contrary is incorrect.

Counsel's argument is further discounted by § 3302 20 which, in defining Manufacturer" excludes " a *practitioner, or ... his authorized agent . . . .*" Thus, it becomes even clearer that the term "agent" as used in Article 33 is not so narrow as counsel argues.

Moreover, can there be any question that a person who lawfully obtains and possesses

oxycodone, a controlled substance, is lawfully entitled to possession?  Obviously, given the above-cited provisions, the answer is No.   That being so,  under the facts of this case, how can it be said that on May 28, 2012, Plaintiff was not acting as her sister's  agent in returning to her the pain medication she left in Plaintiff's home the night before?[5]

## C.    **Temporary Incidental Possession**

Oddly, Defendants' counsel argues that § 3305 does not apply because Plaintiff's possession was not "temporary" but was  prolonged.   (Defendants' Memorandum of  Law, page 16) Plaintiff's sister called her shortly after she got home Sunday night, the day before Memorial Day, and told her she had left her pills at Plaintiff's house.   Early the next morning, when stopped by Hicks, Plaintiff was driving to the City to return the pills to her sister. (Exhibit D, page 27, line 4 -page 28, line 12, Exhibit I, page 50, line 18-page 53, line18, annexed to the Chapman-Langrin Declaration).

It is beyond frivolous to suggest that Plaintiff's possession of the pills from Sunday night, when she first learned the pills had been left in her home by her sister,  until early the following morning ,when she was stopped by Officer Hicks while  en route to her sister's to return the pills, was not "temporary", to wit, "for a limited time", *Webster's Collegiate Dictionary*, 19th Edition; "that which is to last for a limited time only", *Black's Law*

---

[5] Counsel's arguments concerning the "agency defense" , at page 15-16 of Defendants' Memorandum of Law have no relevance  since, *inter alia,* the defense has limited applicability and only to criminal cases and generally means that "one who acts on behalf of a purchaser of drugs cannot be convicted of criminal sale of a controlled substance, or of criminal possession thereof with intent to sell." (*People v. Perez*, 60 A.D.2d 656, 400 N.Y,S,2d 559, 560)

*Dictionary*, Fourth Edition.[6]

Other States having similar "temporary incidental" laws have addressed the issue framed in this case, Thus, among the "circumstances in which a person might take possession fo a controlled substance without any unlawful intent", the Supreme Court of Kentucky included "a homeowner finding medicine left behind by a guest." *Kentucky v. Adkins*, 331 S.W.3d 260, 263-64 (2011). In *State v. Miller*, 193 P.2d 92, 96 (Sup. Ct of Utah, 2008) the Court held that the term "possess" as used in the the context of unlawful possession of a controlled substance "excludes temporary possession of a controlled substance for the purpose of returning it to its lawful owner."(house guest inadvertently leaves a bottle of pills at homeowner's home). Otherwise, "construing the term 'possess' to include brief, innocent possession contradicts the legislature's interpretive guidelines and creates a myriad of absurd prosecutorial possibilities... ." § 3305 is much more than the New York State legislature's interpretive guideline which, when applied in  common sense fashion, renders Plaintiff's temporary incidental possession not unlawful. See also, *People v. E.C.,* 195 Misc. 2d 680, 761 N.Y.S.2d 443, 445 (Sup. Ct. Queens Cty. 2003).


## PLAINTIFF SATISFIES ALL THE ELEMENTS NECESSARY TO SUBSTANTIATE  HER MALICIOUS PROSECUTION CLAIM

---

[6]  We note that neither Article 33 of the Public Health Law not Section 220.00, et seq of the Penal Law define "temporary" or "incidental".

17

To state a claim for malicious prosecution under New York State law, the plaintiff must allege, and later prove, "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir. 1995). In this case, Defendants dispute the second, third and fourth elements.

Based upon the foregoing discussion and the case authorities cited therein, we have addressed the lack of probable cause for Plaintiff's arrest which initiated the criminal proceeding forming the basis for the malicious prosecution claim. Significantly, the law in the Second Circuit is that " a lack of probable cause generally creates an inference of malice." *Bond v. City of New York*, 336 F.3d 72, 78 (2d Cir.2003). The same is true where, as in this case, the arrest initiating the prosecution was pursued with "reckless disregard of the rights of the plaintiff." *Manganiello* 612 F.3d at 163.

As to the second element, Defendants agree that, as alleged in the Complaint, para. 41, on July 26, 2012, the Westchester County District Attorney, having been provided with a sworn statement from Plaintiff's sister, Paula Fontanette, withdrew the criminal complaint against Plaintiff. Notably, the sworn statement simply confirmed the information given to Officer Hicks, at the time of the arrest; namely, the pills belonged to Fontanette, that she had inadvertently left them at Plaintiff's home the night before, that Plaintiff was driving to the City ro return them to her, and that she had a valid prescription for the pills.(Complaint, paras.

15, 17)  In fact, Fontanette went to County Police Headquarters and  provided the same information to the desk officer, Defendant John Doe 1,  before Plaintiff was  processed and transported to the White Plains City Court for arraignment. [7]  (Complaint, paras. 19-21, annexed as B to the Chapman-Langrin Declaration).  There is no dispute that the  duty judge was not advised by any law enforcement officer that Hicks and John Doe 1 had been given this information which is both relevant and probative on the issue of malice. Upon the withdrawal of the charges, the Yonkers City Court file was sealed pursuant to CPL 160.50.

Defendants argue "the termination of the proceeding was not necessarily determined in plaintiff's favor, but was rather withdrawn by the District Attorney." (Defendants Memorandum of Law, page 21) Counsel has cited three cases in support of the proposition that withdrawal of criminal charges by the District Attorney is not considered a termination in favor of the accused.  However, reliance on those cases is misplaced as none relate to the facts of this case.

In *Breen v. Garrison*, 169 F.3d 152, 153 (2d. Cir. 1999), the "charge was subsequently dismissed for facial insufficiency pursuant to section 170.30 of New York's Criminal Procedure Law" and, thus, "was not a decision on the merits". In *Del Col v. Rice*, 2012 WL 6589839 (E.D.N.Y. 2012), the indictment was dismissed based upon the prosecutor's lack of authority to present the charges to the grand jury and, again, was not a decision on the merits. However, the District Court recognized that "where an accused was not acquitted on the

---

[7]  Fontanette is unable to recall the name of the duty officer.

merits, a plaintiff may still establish favorable termination by establishing a 'final disposition such as to indicate the accused's innocence' or a *formal abandonment by the prosecutor of the criminal proceeding.*" (emphasis added).

Finally, in *Rothstein v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004), the Court, citing *Smith-Hunter v. Harvey,* 95 N.Y.2d 191, 196, 712 N.Y.S.2d 438 (2000), observed that " A termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned *pursuant to a compromise with the accused.*"   (emphasis added) The charges in this case were withdrawn by the prosecutor but definitely not as part of a compromise with Plaintiff. To the contrary, the charges were withdrawn by the prosecutor based upon his evaluation and consideration of the totality of the circumstances consisting of the same information Plaintiff and Fontanette gave to Hicks at the scene of the arrest. The withdrawal of the charges and the dismissal of the case by the District Attorney was a formal abandonment of the criminal proceeding by the prosecutor; to wit, a favorable termination for the Plaintiff.

"Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused [for malicious prosecution claim purposes], only when its final disposition is such as to indicate the innocence of the accused." " *Murphy v. Lynn*, 118 F.3d 938, 948 (2d . Cir 1997) "A termination of criminal charges is indicative of innocence when the 'failure to proceed "impl[ies] a lack of reasonable grounds for the prosecution" ' (internal citations omitted" *Willner v. Town of North Hempstead*, 977 F. Supp. 182, 186 (E.D.N.Y.

1997)   In the context of this case, based upon the reason for the withdrawal of the charges, the District Attorney's action is the same as a declaration that the charges should not have been filed in the first place.

Defendants are not entitled to summary judgement on Plaintiff's Malicious Prosecution claim.

## DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGEMENT DISMISSING  PLAINTIFF'S ABUSE OF PROCESS CLAIM

Defendants argue that because there was probable cause for Plaintiff's  arrest, her Abuse of Process claim must be dismissed. For the reasons previously stated, Officer Hicks did not have probable cause and his actions in turning a deaf ear to the readily verifiable information provided at the scene of the arrest by Plaintiff and Fontanette, speaks volumes to his wilful abuse of process.

## DEFENDANTS WITHHELD EXCULPATORY INFORMATION FROM THE DISTRICT ATTORNEY

There is no dispute that Hicks never informed the District Attorney of the information he received from Plaintiff and her sister, at the scene of the arrest.  Nor is there any dispute that the information was provided to the District Attorney by Plaintiff's counsel, not by any representative of the Westchester County Department of Public Safety associated with Plaintiff's arrest. There is also no dispute that the duty judge sitting in the White Plains City Court was not advised, during Plaintiff's appearance for the purpose of setting bail, of the information she gave to Hicks. There is no dispute that Hicks did not even disclose the

information to any fellow officer involved in Plaintiff's arrest or processing.

Further, there is no dispute that the formal criminal complaint charging Plaintiff with the unlawful possession of the oxycodone, was prepared by the District Attorney based upon his review of Hick's incident report, a copy of which is annexed as Exhibit K to the Chapman-Langrin Declaration. (Exhibit E, page 103, line 15-104, line 16, annexed to the Chapman-Langrin Declaration) Hicks did not include in his incident report the information provided by Plaintiff and Fontanette. (Exhibit E, page 106, line 5-11, Exhibit K, annexed to the Chapman-Langrin Declaration).

Defendants' argument that the evidence withheld from the District Attorney by Hicks "was not material to plaintiff's guilt" is beyond folly. (Defendants' Memorandum of Law, page 23). How is it possible that evidence or information concerning the innocence of an accused is not material to her guilt?  The question answers itself.

Similarly frivolous is counsel's claim that since the District Attorney received the information from Plaintiff's counsel "some two weeks later after [her] arrest" she was not prejudiced in any way by Hicks' omission of the information in the incident report. Seemingly, counsel fails to grasp that had the information been included in the incident report, the District Attorney would likely not have pursued the prosecution in the fist place; a reasonable inference since he withdrew the charges once he was provided the information as confirmed by Fontanette's sworn written statement. Why would he have reacted differently had he been given the same information by Hicks, the arresting officer?

22

Defendants are not entitled to summary judgement dismissing Plaintiff's Fourth Cause of Action.

## PLAINTIFF HAS ESTABLISHED A CLAIM AGAINST THE COUNTY DEFENDANTS FOR PUNITIVE DAMAGES

Plaintiff was arrested, charged with a felony punishable by fifteen years in state prison, defamed by a publicly filed accusatory instrument, held in custody for almost twelve hours, taken in handcuffs and, possibly leg restraints, from the County Police Headquarters in Hawthorne, New York to the White Plains City Court in a paddy wagon, taken to a public courtroom in hand cuffs, had bail set in the amount of $5,000.00, and transported in the same paddy wagon to the County Jail in Valhalla, where she was held in custody until her bail was posted that evening. Arrested on May 28, 2012, the charges were not withdrawn until two months later.

All because Hicks arbitrarily chose to ignore the information he received from Plaintiff and Fontanette that Plaintiff was not in unlawful possession of the oxycodone, information representing an important component of the totality of the circumstances to be considered by the arresting officer in determining probable cause.

As previously noted above, Hicks was aware of the interaction between Penal Law §220.00 and Public Health Law §3305. Thus, at worst his actions were with knowledge that he was violating her rights and at best he acted with reckless disregard for whether he was violating her rights. Either way, Plaintiff is entitled to pursue her claim for punitive damages.

## CONCLUSION

Based upon the foregoing, Defendant Hicks' motion for summary judgment should be denied in its entirety.

Dated: White Plains, New York
August 13, 2014

Respectfully submitted,

By:   WILLIAM I. ARONWALD (WIA 9327)
Aronwald & Pykett
Attorney for Plaintiff Sherrie Deanda
81 Main Street, Suite 450
White Plains, New York 10601
(914) 946-6565
(914) 946-5906 (fax)

TO: Taryn A. Chapman-Langrin, Esq.
Senior Assistant County Attorney
600 Michaelian Office Building
148 Martine Avenue
White Plains, New York 10601